[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-11258

_____

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**March 22, 2006**
**THOMAS K. KAHN**
**CLERK**

Agency No. A75-977-673

MOHAMMED SALIM ALI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(March 22, 2006)**

Before CARNES, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Mohammed Salim Ali, a citizen and native of Pakistan, petitions for review

of the Board of Immigration Appeals's ("BIA") order denying his motion to

reopen removal proceedings. At his removal hearing, Ali conceded removability on several grounds, including his conviction in Georgia state court for child molestation, but sought relief under the Convention Against Torture ("CAT"). The immigration judge ("IJ") denied withholding of removal under CAT, and the BIA affirmed. Thereafter, Ali's extraordinary motion for a new trial on his child molestation offense was granted by a Georgia state court, as was the State of Georgia's motion to *nolle prosse* charges. Ali then filed a motion with the BIA to reopen his removal proceedings, arguing that he no longer had a "conviction" for purposes of the Immigration and Nationality Act ("INA"). In addition, Ali produced an uncertified copy of a pardon that he had purportedly received from the State. The BIA denied Ali's motion to reopen, and he now seeks review in this Court. We deny Ali's petition.

## I. BACKGROUND

Ali entered the United States in 1991 as a nonimmigrant visitor. In October of 1993, he pled guilty in the Superior Court of Clayton County, Georgia, to two counts of child molestation and was sentenced to five years' probation on each count, to be served concurrently. This sentence was imposed under Georgia's First Offender Act, which allows a first time felony offender to be placed on probation (or sentenced to confinement) and serve out that probation or confinement without receiving an adjudication of guilt. *See* O.C.G.A. § 42-8-60 et seq. In 1996, Ali

2

married a lawful permanent resident, by whom he now has two U.S. citizen daughters. Ali adjusted of his status to that of a lawful permanent resident in 2000. His I-485 application for permanent residence responded "NO" to the question of whether he had been "arrested, cited, charged, indicted, fined or imprisoned for breaking or violating any law or ordinance, excluding traffic violations."

In May of 2002, the Immigration and Naturalization Service ("INS") issued Ali a Notice to Appear ("NTA") charging him with removability under 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony, namely, a crime related to the sexual abuse of a minor.[1] In September of 2002, the INS lodged additional charges against Ali, alleging that he was removable under 8 U.S.C. § 1227(a)(1)(A), as an alien who was inadmissible at the time of the adjustment of his status because (1) he had been convicted of a crime involving moral turpitude, and (2) he had sought to procure an immigration benefit by willfully misrepresenting a material fact. Ali appeared through counsel at the removal hearing and conceded removability on the charge made against him in the NTA, as well as the additional charges described above. However, he applied for withholding of removal under the Convention Against Torture ("CAT"), because

---

[1] Although the functions of the INS were transferred to the Department of Homeland Security by the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, we will continue to use the abbreviation "INS" for ease of reference.

he believed he would be jailed and tortured upon his return to Pakistan (in part because of his child molestation offense).

After considering testimony and evidence in a hearing on Ali's application for withholding of removal, the IJ denied relief and ordered Ali removed to Pakistan. Ali appealed to the BIA, which dismissed his appeal in September of 2003. The BIA found that Ali was convicted of a particularly serious crime (child molestation), that Ali admitted as much, and that Ali was therefore ineligible for withholding of removal under CAT. Although the BIA found that Ali was potentially eligible for deferral of removal, the BIA determined that Ali had not established that it was more likely than not that he would be tortured if removed to Pakistan. Ali did not petition for review from the BIA's decision.

On October 29, 2003, the Superior Court of Clayton County, Georgia, granted Ali's extraordinary motion for a new trial on his child molestation offense. On November 11, 2003, the Superior Court granted the district attorney's motion to *nolle prosse* the child molestation charges. Several days later, Ali filed a motion with the BIA to reopen and terminate removal proceedings. Due to the *nolle prosse*, Ali claimed, he was no longer removable as an aggravated felon or as one inadmissible at the time of adjustment. The BIA denied the motion, finding that Ali had failed to establish a basis for reopening proceedings. Citing its decision *In re Pickering*, 23 I. & N. Dec. 621, 624 (BIA 2003), the BIA explained that a

4

respondent no longer has a "conviction" within the meaning of 8 U.S.C. § 1101(a)(48)(A) if a court vacates the conviction based on a defect in the underlying proceedings, but not if the conviction is vacated for reasons unrelated to the merits of the underlying criminal proceedings. The documentation provided by Ali, the BIA found, was insufficient to establish that he was the victim of a substantive or procedural defect. Although Ali also argued that he had been pardoned by Georgia's Board of Pardons and Paroles on February 13, 2004, the BIA found that the uncertified photocopy of his pardon was "not sufficiently reliable to meet the respondent's heavy evidentiary burden to reopen proceedings." Finally, the BIA stated that even if it did accept Ali's pardon, the pardon would not cure his removability with respect to the charges pertaining to his adjustment of status in 2000.

On appeal, Ali contends that the BIA erred in its consideration of his "conviction" and "pardon," erred in placing the burden of proof upon him, erred in concluding that he was removable for willfully misrepresenting a material fact, deprived him of due process, and issued an impermissibly vague order. The Government defends the BIA's decision and further asserts that we lack jurisdiction over Ali's appeal.

## II. STANDARD OF REVIEW

We review the BIA's denial of a motion to reopen for abuse of discretion. *Lonyem v. U.S. Att'y Gen.*, 352 F.3d 1338, 1340 (11th Cir. 2003) (per curiam). "Our review is limited to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." *Abdi v. U.S. Att'y Gen.*, 430 F.3d 1148, 1149 (11th Cir. 2005) (per curiam) (internal quotes and citation omitted). Insofar as Ali claims that the BIA's actions deprived him of due process, however, we review constitutional claims de novo. *Lonyem*, 352 F.3d at 1341. Generally, "[m]otions to reopen are disfavored, especially in a removal proceeding, 'where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States.'" *Abdi*, 430 F.3d at 1149 (quoting *INS v. Doherty*, 502 U.S. 314, 323, 112 S. Ct. 719, 724-25, 116 L. Ed. 2d 823 (1992)). An alien may file one motion to reopen removal proceedings, which motion "shall state the new facts that will be proved at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7); *Abdi*, 430 F.3d at 1149. "A motion to reopen proceedings shall not be granted unless it appears to the [BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing . . . ." 8 C.F.R. § 1003.2(c)(1).

6

We review our subject matter jurisdiction de novo. *Ortega v. U.S. Att'y Gen.*, 416 F.3d 1348, 1350 (11th Cir. 2005) (per curiam).

## III. DISCUSSION

### A. *Subject Matter Jurisdiction*

The Government contends that Ali is an alien convicted of an aggravated felony, and therefore within the scope of 8 U.S.C. § 1252(a)(2)(C), which provides that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii) . . . ."[2] Until recently, when a final order of removal was subject to § 1252(a)(2)(C), our review was limited to "determining whether the petitioner is (1) an alien (2) who was removable (3) for committing a crime enumerated in one of the statutes listed in section 1252(a)(2)[(C)]." *Balogun v. U.S. Att'y Gen.*, 425 F.3d 1356, 1359 (11th Cir. 2005). If those conditions were met, and there were no constitutional defects in the alien's removal proceedings, we would have to dismiss the petition for lack of jurisdiction. *Id.* However, the REAL ID Act of 2005, which amended § 1252, "ha[d] the effect of restoring some

---

[2] Implicit in the grant of jurisdiction to review a final order of removal, *see* 8 U.S.C. § 1252(a)(1), is the authority to review the type of order at issue in the instant case–an order denying a motion to reopen a final order of removal. *See Patel v. U.S. Att'y Gen.*, 334 F.3d 1259, 1261 (11th Cir. 2003). "This implicit jurisdiction in § 1252(a)(1) is the only jurisdiction we have to review an order denying a motion to reopen." *Id.* Thus, the limitations on our jurisdiction to review a final order of removal, including any pertinent statutory amendments, also control our jurisdiction to review an order denying a motion to reopen a final order of removal. *See id.* at 1262.

of our jurisdiction to decide the 'questions of law' an alien raises in a petition to review a final order of removal." *Id.*[3]  These amendments are "retroactively applicable to all pending proceedings regardless of the date of the final administrative order." *Id.* at 1360.  Thus, in addition to the review otherwise available under § 1252(a)(2)(C), we have jurisdiction to review "constitutional claims" or "questions of law" raised by Ali.  *See* 8 U.S.C. § 1252(a)(2)(D).

B.    *Motion to Reopen*

    1.    *First Offender Act*

Ali contends that his plea under Georgia's First Offender Act did not constitute a "conviction" for purposes of the INA, because the plea was not

---

[3] As codified, the REAL ID Act states in relevant part:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D).

accompanied by an actual adjudication of guilt.[4]  The INA defines the term

"conviction" as follows:

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court, or if adjudication of guilt has been withheld, where–
> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A).  We have recognized that the BIA, in considering this

statutory language, has held that "state convictions expunged under a rehabilitative

statute are still convictions for immigration purposes."  *Resendiz-Alcaraz v. U.S.*

*Att'y Gen.*, 383 F.3d 1262, 1268 (11th Cir. 2004) (citing *In re Roldan-Santoyo*, 22

I .& N. Dec. 512, 528 (BIA 1999), *order vacated sub nom. Lujan-Armendariz v.*

*INS*, 222 F.3d 728 (9th Cir. 2000)).  We found this interpretation supported by the

---

[4] The First Offender Act states in relevant part:

(a) Upon a verdict or plea of guilty or a plea of nolo contendere, but before an adjudication of guilt, in the case of a defendant who has not been previously convicted of a felony, the court may, without entering a judgment of guilt and with the consent of the defendant:
> (1) Defer further proceeding and place the defendant on probation as provided by law; or
> (2) Sentence the defendant to a term of confinement as provided by law.

O.C.G.A. § 42-8-60(a).  Upon fulfillment of the terms of probation or release from confinement, "the defendant shall be discharged without court adjudication of guilt."  *Id.* § 42-8-62(a). Furthermore, "[t]he discharge shall completely exonerate the defendant of any criminal purpose and shall not affect any of his or her civil rights or liberties; and the defendant shall not be considered to have a criminal conviction."  *Id.*

9

plain language of the statute, and held that "a state conviction is a conviction for immigration purposes, regardless of whether it is later expunged under a state rehabilitative statute, so long as it satisfies the requirements of § 1101(a)(48)(A)." *Id.* at 1271. Here, Ali pled guilty to two counts of child molestation and received 5 years probation on each count, thereby satisfying the requirements of § 1101(a)(48)(A). Thus, the mere fact that Ali was sentenced pursuant to Georgia's First Offender Act does not mean that he lacks a "conviction" for purposes of the INA.

### 2. *New Trial and Nolle Prosse*

Ali also argues that he has no "conviction" under the INA because his extraordinary motion for a new trial was granted and the State, through its *nolle prosse* motion, abandoned the charges against him. As the BIA has explained, whether a vacated conviction remains a conviction for purposes of the INA depends upon the reason the conviction was vacated:

> In accord with the federal court opinions applying the definition of a conviction at section 101(a)(48)(A) of the Act [8 U.S.C. § 1101(a)(48)(A)], we find that there is a significant distinction between convictions vacated on the basis of a procedural or substantive defect in the underlying proceedings and those vacated because of post-conviction events, such as rehabilitation or immigration hardships. Thus, if a court with jurisdiction vacates a conviction based on a defect in the underlying criminal proceedings, the respondent no longer has a "conviction" within the meaning of section 101(a)(48)(A). If, however, a court vacates a conviction for reasons

> unrelated to the merits of the underlying criminal proceedings, the respondent remains "convicted" for immigration purposes.

*In re Pickering*, 23 I. & N. Dec. 621, 624 (BIA 2003). Under *Pickering*, the BIA looks to "the law under which the [state] court issued its order and the terms of the order itself, as well as the reasons presented by the respondent in requesting that the court vacate the conviction." 23 I. & N. Dec. at 625.

Georgia law grants a trial court discretion to allow the filing of an extraordinary motion for new trial after the expiration of a 30-day period from the entry of judgment (during which motions for a new trial are normally filed), where "good reason" is shown why the motion was not timely made. *See* O.C.G.A. § 5-5-41(a); *Martin v. Children's Sesame, Inc.*, 372 S.E.2d 648, 649 (Ga. Ct. App. 1988). This "good reason" normally consists of newly discovered evidence, but may be predicated on other circumstances. *See id.* Nevertheless, the motion generally requires such an extraordinary statement of facts as would probably produce a different result if a new trial was granted. *See Gibson Prods. Co. of Albany v. Addison*, 169 S.E.2d 374, 375 (Ga. Ct. App. 1969). Here, the purported "new evidence" asserted in Ali's motion was that he mistakenly thought a guilty plea under the First Offender Act would be tantamount to an acquittal. "Had [he] been fully aware of how the federal government would consider his First Offender

11

adjudication," Ali claimed, "he would have taken his case to trial."[5]  The Superior Court granted Ali's motion "for good cause shown and by consent of the parties," without further explanation.[6]  Likewise, the court summarily granted the State's *nolle prosse* motion, which was based on "the circumstances of the case, the age of the case, the status of the defendant, and the total implications of a retrial."

None of the foregoing establishes that Ali's conviction was vacated based on a procedural or substantive defect in the underlying proceedings.  If anything, the strongest inference supported by these materials is that the effect of Ali's conviction on his immigration status was the principal motive underlying his attack on his state court conviction.  Even so, Ali's counsel argues, what is more important is the Superior Court's reason for granting Ali's extraordinary motion for a new trial and the State's motion to *nolle prosse* charges.  According to counsel, that reason was that Ali was not adequately advised, prior to his guilty plea, as to the effect the plea would have upon his immigration status.  This is pure speculation, for the court's rationale is highly ambiguous at best.  Nothing in the

---

[5] Although Ali's motion summarily asserts that he was "innocent" of the molestation charges against him, the motion does not appear to be grounded in a claim of actual innocence, and Ali does not argue that his conviction was vacated on this basis.

[6] It is not clear that a new trial was, as a matter of law, available to Ali.  *See Reese v. State*, 603 S.E.2d 685, 685 (Ga. Ct. App. 2004) (explaining that "[o]ne who has entered a guilty plea cannot move for a new trial, as there was no trial.").  However, the BIA has previously declined to "go behind [a] state court judgment" and ask whether the state court acted in accord with state law.  *See In re Rodriguez-Ruiz*, 22 I. & N. Dec. 1378, 1379-80 (BIA 2000).  Rather, the BIA "accord[ed] full faith and credit to [the] state court judgment." *Id.* at 1380.

record demonstrates that the court believed Ali was deprived of effective assistance of counsel, or believed that Ali's plea was taken in violation of state law.[7] Ali attempts to analogize his case to *In re Adamiak*, 23 I. & N. Dec. 878 (BIA 2006). In that case, however, the alien was permitted to withdraw his guilty plea because of a substantive defect in the underlying proceedings–"the failure of the court to advise the [alien] of the possible immigration consequences of his guilty plea, *as required by Ohio law*." *Id.* at 879 (emphasis added). Here, nothing in Ali's extraordinary motion for a new trial, the State's *nolle prosse* motion, or the Superior Court's orders indicates that Ali's guilty plea was taken in violation of Georgia law or the federal constitution.[8] In short, the BIA committed no error of

---

[7] Thus, Ali's case is distinguishable from *Sandoval v. INS*, 240 F.3d 577 (7th Cir. 2001), which he urges us to follow. In *Sandoval*, the alien stated in his post-conviction motion that his counsel had advised him not to worry about his immigration status, and that he would not have entered a guilty plea had he known it would subject him to deportation. *See id.* at 578. Under Illinois law, a guilty plea entered in reasonable reliance upon erroneous advice of counsel that the plea would have no collateral deportation consequence could be rendered involuntary. *See id.* at 578-79. Here, there is no claim in Ali's extraordinary motion for a new trial that Ali received or relied upon erroneous advice of counsel regarding the collateral consequences of his plea. Furthermore, while Georgia presently requires by statute that a non-citizen entering a guilty plea be advised that the plea may affect his immigration status, *see* O.C.G.A § 17-7-93(c), that requirement applies only to pleas accepted on or after July 1, 2000. *See Palacios v. State*, 554 S.E.2d 498, 499-500 (Ga. Ct. App. 2001). Ali entered his plea in 1993, some seven years before the requirement took effect. At the time of Ali's plea then, neither Georgia law nor the federal constitution required that he be advised that the plea might affect his immigration status. *See id.*; *United States v. Campbell*, 778 F.2d 764, 768 (11th Cir. 1985) ("[C]ounsel's failure to advise the defendant of the collateral consequences of a guilty plea cannot rise to the level of constitutionally ineffective assistance.").

[8] Ali also relies on *In re Kaneda*, 16 I. & N. Dec. 677 (BIA 1979) (INS failed to prove that dismissal of respondent's marijuana charge under state first offender statute did not remove basis for deportability) and *In re O'Sullivan*, 10 I. & N. Dec. 320 (BIA 1963) (upholding special inquiry officer's decision to terminate deportation proceedings where respondent's motion for

law by finding that Ali failed to establish that his conviction was vacated based on a substantive or procedural defect in the underlying proceedings.

### 3. *Pardon*

It is uncontroverted that a "full and unconditional pardon" would defeat the charge that Ali is removable under 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony. *See* 8 U.S.C. § 1227(a)(2)(A)(v); *Balogun*, 425 F.3d at 1362. However, the BIA found that Ali's uncertified photocopy of his purported pardon was "not sufficiently reliable to meet [his] heavy evidentiary burden to reopen proceedings." Ali contends that the BIA should have considered his photocopy, because it still revealed a signature and a seal. He concedes, however, that under 8 C.F.R. § 287.6, "an official record or entry . . . when admissible for any purpose, shall be evidenced by an official publication thereof, or by a copy attested by the official having legal custody of the record or by an authorized deputy." Although Ali argues that § 287.6 is not the "exclusive" method of authentication, *see Khan v. INS*, 237 F.3d 1143, 1144 (9th Cir. 2001) (per curiam), he offers no compelling reason why he could not have obtained and

---

new trial was granted and case was *nolle prossed*, no rationale was given for this action in the court's order, and nothing indicated that state court exceeded its authority under state law). These cases, however, preceded the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, which defined "conviction" for purposes of the INA. Prior to IIRIRA, the BIA had held (with some exceptions) that vacated or expunged convictions could *not* be the basis for an alien's removal. *See Cruz-Garza v. Ashcroft*, 396 F.3d 1125, 1128 (10th Cir. 2005). After the passage of IIRIRA, the BIA modified its position and developed the rule set forth in *Pickering*. *See id.*

submitted a properly certified copy of his pardon. Thus, the BIA did not abuse its discretion in refusing to consider the uncertified photocopy.

4.      *Additional Grounds for Removal*

As the BIA recognized, even if it had considered Ali's pardon, the pardon would not have eliminated the additional grounds for removal that Ali conceded to at his removal hearing. *See* 8 U.S.C. § 1227(a)(1)(A) ("Any alien who at the time of entry or adjustment of status was within one of more of the classes of aliens inadmissible by the law existing at such time is deportable."); *Balogun*, 425 F.3d at 1362-63 (explaining that pardon exception in § 1227(a)(2)(A)(v) does not extend to grounds of inadmissibility). At the time of his adjustment of status in 2000, Ali was an alien who had been convicted of a crime involving moral turpitude, and was thus inadmissible pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I). Although Ali's conviction would by then have been expunged under Georgia's First Offender Act, for the reasons stated above it remained a conviction for purposes of the INA. Furthermore, on his I-485 application for permanent residence, Ali answered "NO" in response to the question of whether he had been "arrested, cited, charged, indicted, fined or imprisoned for breaking or violating any law or ordinance, excluding traffic violations." Thus, he was also inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i), as an "alien who, by fraud or willfully misrepresenting a material fact," sought to procure an immigration benefit. Although Ali now denies that his

15

misrepresentation was willful, he conceded as much at his removal hearing.[9] Ali also contends that the misrepresentation was immaterial, but we find this argument unpersuasive. Had Ali disclosed his conviction for a crime involving moral turpitude, his inadmissibility would have been apparent, and it would have adversely affected his application for permanent residence. *See* 8 U.S.C. § 1255(a).[10]

Ali further asserts that the BIA's decision was "impermissibly vague," because he cannot be charged with grounds of inadmissibility, and the BIA did not specify which basis for removal it was relying upon. These claims are without merit. Title 8 U.S.C. § 1227(a)(1)(A) plainly contravenes Ali's assertion that he cannot be removed for having been inadmissible at the time of his adjustment of status. Furthermore, the BIA clearly found Ali to be removable as an alien who

---

[9] Ali suggests that because his conviction was expunged by the time he applied for permanent residence, his misrepresentation was not willful, for he had reason to believe that he no longer had a conviction. Even if we credit this argument, it does not explain how Ali could reasonably have believed that he had not been "cited, charged, [or] indicted" for violating the law. Notably, Ali does not raise in his briefing the explanation contained in the narrative portion of his I-213 Record of Deportable/Inadmissible Alien. According to that narrative, Ali claimed that he did notify his attorney about the child molestation convictions, but at the time he (Ali) signed the I-485 application for permanent residence, certifying that it was true and correct, he did not realize that his attorney had answered "NO" to the question at issue.

[10] Ali points out that the INA grants the Attorney General discretion to waive the inadmissibility of an alien who violated § 1182(a)(6)(C)(i) if the refusal of admission would result in extreme hardship to a citizen or lawful permanent resident spouse or child. *See* 8 U.S.C. § 1182(i)(1). There is no showing, however, that Ali ever sought this discretionary relief.

16

had been convicted of an aggravated felony, and alternatively, as an alien who was inadmissible at the time of adjustment of status.

5.    *Due Process*

Finally, Ali claims that the BIA deprived him of due process by (1) placing the burden of proof on him to show that his conviction had been vacated because of a procedural or substantive defect in the underlying proceedings, and (2) refusing to consider his full and unconditional pardon.  Ali again compares his case to *Sandoval*, which states that the INS must "establish the facts supporting deportability by clear, unequivocal and convincing evidence."  240 F.3d at 581 (internal quotes and citation omitted).  Unlike the alien in *Sandoval*, however, Ali is appealing from the BIA's denial of a motion to reopen, not the BIA's review of an IJ determination on removability.  Indeed, Ali *conceded* removability as charged, and chose merely to pursue CAT relief.  When the BIA decided that Ali was not eligible for withholding or deferral of removal, Ali did not appeal the BIA's decision.  Rather, he obtained relief in Georgia state court on his criminal conviction and then moved to reopen removal proceedings on that basis.  Such a movant bears a "heavy burden," and must "present[] evidence of such a nature that the [BIA] is satisfied that if proceedings before the [IJ] were reopened, with all attendant delays, the new evidence offered would likely change the result in the case."  *In re Coehlo*, 20 I. & N. Dec. 464, 473 (BIA 1992); *see Beqiri v. U.S. Att'y*

17

*Gen.*, 147 Fed. Appx. 87, 90 (11th Cir. 2005) (unpublished) (per curiam) (same); *accord Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004) ("The party filing a motion to reopen bears a heavy burden").  Thus, the BIA did not err in placing the burden of proof on Ali.  Likewise, for the reasons stated above, the BIA did not deprive Ali of due process by refusing to consider the uncertified photocopy of his purported pardon.  Although Ali contends that the BIA should have "explored other methods of authentication of the pardon," the burden of authentication was on Ali, not the BIA.

## IV.  CONCLUSION

Having considered the briefs, arguments of counsel, and the applicable law, we find that the BIA did not abuse its discretion in denying Ali's motion to reopen. Accordingly, we deny Ali's petition for review.

**PETITION DENIED**.