[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-12392
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 17, 2010
JOHN LEY
CLERK

Agency No. A097-934-505

ROSE DANIELE BRUTUS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(February 17, 2010)

Before BIRCH, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Petitioner Rose Daniele Brutus ("Brutus"), a native and citizen of Haiti,

seeks review of a decision by the Board of Immigration Appeals ("BIA") denying

her application for asylum, withholding of removal under the Immigration and

Nationality Act ("INA"), and relief under the United Nations Convention Against

Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment

("CAT").  After careful review of the record, we DENY her petition for review.

## I.  BACKGROUND

Brutus was admitted from Haiti to the United States in August 2003 as a

nonimmigrant visitor with authorization to remain in the United States until 13

February 2004.  She overstayed her visa and was subsequently served with a notice

to appear, charging her with removability under INA § 237(a)(1)(B).  After

conceding removability, Brutus filed for asylum and withholding of removal based

on her political opinion.

An evidentiary hearing was held in August 2006 at which Brutus submitted

evidence and testified as follows.  Brutus did not affiliate with any political group

while living in Haiti.  In 1999, her father joined the Assembly for Patriotic

Citizens, a political party that opposed the Lavalas.[1]  In May 2000, the Lavalas

threw stones at a group of demonstrators, including Brutus' father, who were

protesting the outcome of a mayoral election.  In December 2001, Brutus' father

---

[1] The Fanmi Lavalas is a political party that supported former President Jean-Bertrand Aristide.

publicly denounced the Lavalas on national radio. In late January 2002, two Haitian police officers attacked Brutus' father and her sister at their home, and detained both of them. Brutus did not witness this attack as she was at her grandmother's house. Brutus' sister was released the next month, although Brutus' father remained in custody until June 2002. Brutus believes that her father was tortured during his detention.

While her father was incarcerated, three people ransacked Brutus' house and stole some jewelry in March 2002. Nobody was home at the time but Brutus learned of the incident from neighbors. Brutus, along with her mother and brother, went into hiding at her aunt's house in Carrefour thereafter.

On 15 May 2002, two masked individuals followed Brutus after she left church in Carrefour, pushed her against a wall, and asked her, "Are you the daughter of Dr. Brutus, the person who is against the Lavalas?" Administrative Record ("AR") at 193-94, 212, 214. Based on that question, Brutus "knew that they were Lavalas." Id. at 214. Brutus denied being Dr. Brutus' daughter. The assailants slapped her but let her go after about ten minutes. Brutus did not testify as to what injuries, if any, she sustained, although she admitted that she did not see a doctor afterwards. Rather, her mother provided her with some "herbal traditional medicine." Id. at 223.

Five days later, Brutus relocated with her mother and brother to the

3

Dominican Republic. They returned to Haiti a month later after learning that her father might be released. Following her father's release in June 2002, Brutus' family relocated within Haiti from Port-Au-Prince to Thomazeau. Brutus' father did not return to politics again after his release from prison.

Almost a year later, in May 2003, Brutus' brother was killed. Though Brutus blamed the Lavalas for her brother's death, she admitted she had no proof of their involvement. Brutus also acknowledged that her brother had no involvement with his father's political group. After Gabriele's death, Brutus' family fled Thomazeau and settled in Delmas. Brutus left Haiti for the United States three months later in August 2003.

Despite Haiti's change in presidents, Brutus said she distrusts the new government. She feared the Lavalas will attack her if she returns because of her father's former political membership. Brutus' father and mother still live in Haiti. Her sister, now married, resides in Connecticut.

The Immigration Judge ("IJ") rendered an oral decision denying all relief and ordering Brutus' removal. On appeal, the BIA found the IJ's findings of fact and conclusions of law to be "inadequate" and consequently remanded the record "for the preparation of a new decision by the Immigration Judge." Id. at 107.

On remand, a new IJ reviewed the entire record, including additional materials filed by Brutus consisting of newspaper articles and an affidavit from her

4

uncle.  The IJ then issued a written decision without holding a second merits hearing.  Specifically, the IJ found that Brutus was not credible due to inconsistencies between her testimony, asylum application, asylum interview, and her uncle's affidavit.  Even if Brutus were credible, the IJ concluded that she had not suffered past persecution or established a well-founded fear of future persecution.  Accordingly, the IJ denied her application for asylum and withholding of removal under the INA and the CAT.

The BIA dismissed Brutus' appeal in April 2009.  Although it deemed Brutus credible, the BIA affirmed the IJ's determination that she had not been persecuted on account of her actual or imputed political opinion.  The BIA observed that her father had abandoned politics in 2002, she was not politically active, and there was no objective evidence to show that her brother's death was politically motivated.  The BIA also found insufficient evidence to establish that her May 2002 attack or the March 2002 ransacking of her house were due to her father's political activities.  Moreover, the BIA agreed with the IJ that Brutus could have relocated with her family, and it concluded that circumstances in Haiti had fundamentally changed with Mr. Aristide's resignation.  After denying relief on her claims for asylum, withholding of removal and CAT relief, the BIA rejected Brutus' contention that the IJ violated her due process rights by not holding another hearing.  The BIA explained that its prior order did not mandate a new

5

hearing or the taking of additional testimony. Given that Brutus failed to specify what additional information she would have presented at a new hearing, the BIA concluded that no prejudice had been shown.

In her petition for review, Brutus argues that she demonstrated past persecution on account of an imputed political opinion, thereby entitling her to a presumption of a well-founded fear of future persecution. She contends that she cannot rely on Haiti's new government for protection because the country remains insecure and people like her continue to be killed. In addition to her claim for asylum, Brutus challenges the BIA's denial of withholding of removal under the INA and the CAT. Finally, she reasserts her argument that the IJ violated her due process rights by not holding another evidentiary hearing on remand.

## II. DISCUSSION

We review only the BIA's decision, as the BIA issued its own opinion and set forth its own reasons for denying Brutus' application. See Kueviakoe v. U.S. Att'y Gen., 567 F.3d 1301, 1304 (11th Cir. 2009) (per curiam). The BIA's legal conclusions are subject to de novo review but its factual findings must be affirmed if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1254-55 (11th Cir. 2006) (per curiam) (quotation marks and citation omitted). This highly deferential standard of review permits reversal of the BIA's decision only when the

6

record compels it.  See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230 (11th Cir. 2005) (per curiam).

A.  Claims for Asylum and Withholding of Removal under the INA and the CAT

An alien may be eligible for asylum if she presents credible evidence of past persecution on account of her political opinion, or a well-founded fear that her political opinion will cause future persecution.  See id. at 1230-31.  The alien's political opinion may be her actual opinion or an imputed one.  See Al Najjar v. Ashcroft, 257 F.3d 1262, 1286, 1289 (11th Cir. 2001).  Here, Brutus claims that she was persecuted based on her imputed political opinion.  To prevail on her claim, Brutus must show that "the persecutor falsely attributed an opinion to [her], and then persecuted [her] because of that mistaken belief about [her] views."  Id. at 1289 (quotation marks, brackets, and citation omitted).

Substantial evidence supports the BIA's finding that Brutus failed to establish that she was persecuted on account of her imputed political opinion. Brutus contends that she suffered oppressive acts which cumulatively amounted to persecution.  These acts include the stoning of her father at the 2000 political demonstration, the attack on her sister and father and their subsequent detention, the ransacking of her home, and her brother's death.  Brutus was not present during any of these incidents, however, and she admitted that she was not politically active.  The evidence thus does not support a finding that these acts were directed

7

at Brutus on account of a mistaken belief as to her political views. See id.

Moreover, Brutus admitted she had no proof tying the Lavalas to the ransacking of her house or to her brother's death. The evidence surrounding those unfortunate events is more consistent with acts of random criminal violence, which are insufficient to establish persecution against Brutus based on her imputed political opinion. See Ruiz, 440 F.3d at 1258 ("[E]vidence that either is consistent with acts of private violence . . . , or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground.").

As for her May 2002 encounter with two masked individuals, the evidence does not compel a reversal of the BIA's finding that this incident was not due to her father's political activities. Brutus acknowledged that her assailants never identified themselves as the Lavalas and that she only believed they were Lavalas based on their questions to her. Nevertheless, even if we assumed the Lavalas did accost her on account of her imputed political opinion, the incident lasted a brief ten minutes and did not result in any injuries requiring medical attention. As such, this incident did not rise to the level of persecution required by our precedent. See Sepulveda, 401 F.3d at 1231 (noting that persecution is an "extreme concept, requiring more than a few isolated incidences of verbal harassment or intimidation") (quotation marks and citation omitted); see also Kazemzadeh v. U.S.

8

Att'y Gen., 577 F.3d 1341, 1353 (11th Cir. 2009) (concluding that no persecution occurred where an alien was arrested, interrogated and beaten for five hours, detained for four days, subsequently monitored by Iranian authorities, and forced to appear before a university discipline committee and an Islamic court). Accordingly, we agree with the BIA that Brutus did not demonstrate past persecution on account of her imputed political opinion.

Brutus has also failed to establish a well-founded fear of future persecution based on her imputed political opinion. This fear must be both subjectively genuine and objectively reasonable. See Ruiz, 440 F.3d at 1257. Any fear Brutus possessed was not objectively reasonable because, as the BIA observed, her father has not been politically active since 2002 and Brutus' parents remain unharmed in Haiti. See id. at 1259 (concluding that a petitioner's fear of relocation was contradicted by his family's continued safe residence in the country of removal). Moreover, while a 2008 news article indicates that Haiti's poor living conditions remain among "the worst in the world," the article also reports that "advances in security and reducing crime have been notable, particularly in the capital, Port-au-Prince." AR at 93. According to the article, Haiti's current president since 2006, Rene Garcia Preval, has successfully reduced the "chronic instability and violence in Haiti" with the help of thousands of international peacekeepers. Id. Other news organizations similarly document that "kidnappings appear to have decreased," and

9

that the United Nations peacekeeping force has "begun to make headway in controlling the insecurity there." AR at 99, 102. Substantial evidence thus supports the BIA's findings that Haiti has undergone a fundamental change in circumstances and that Brutus could have relocated with her family to another part of her country.

Brutus rebuts these findings by arguing that her prior relocations within Haiti only resulted in violence towards herself and family members. As previously discussed, though, none of the incidents she testified about constituted persecution against her based on her imputed political opinion. Accordingly, these same incidents do not form a valid basis for an objectively reasonable fear of future persecution. See Sepulveda, 401 F.3d at 1232 (concluding that petitioner could not rely on a restaurant bombing and telephone threats to support an objectively reasonable fear of persecution because those acts did not establish her persecution on account of her political activity).

Based on the foregoing, we conclude that the record does not compel the conclusion that Brutus was entitled to asylum. Because she failed to satisfy the lower standard for asylum claims, we find no grounds to reverse the BIA's determination that she failed to establish her higher burden of proof for withholding of removal under the INA or the CAT. See Al Najjar, 257 F.3d at 1292-93, 1303.

B.  Due Process Claim

Brutus also challenges the IJ's failure to hold a second evidentiary hearing upon remand.  She contends that this violated her due process right to have a meaningful opportunity to be heard.  Because the BIA's order remanded the case "for further proceedings," AR at 108, she submits that a second hearing was required, especially given that the IJ made an adverse credibility finding in the revised opinion.  Brutus maintains that she was prejudiced by her inability to present additional evidence showing why she could not return to Haiti.

We find this claim to be meritless.[2]  We agree with Brutus that aliens have a constitutional due process right to "a full and fair" opportunity to be heard prior to their removal.  Ibrahim v. U.S. Immigration and Naturalization Serv., 821 F.2d 1547, 1550 (11th Cir. 1987); see also Fernandez-Bernal v. Att'y Gen. of the U.S., 257 F.3d 1304, 1310 n.8 (11th Cir. 2001).  Brutus had this opportunity in her 2006 hearing, however, wherein she testified extensively as to her claims.  Notably, Brutus does not challenge the fairness of that hearing.  Contrary to her contention, the BIA's remand order did not require a second hearing, as the BIA itself explained in its 2009 decision.  Rather, the BIA emphasized that "our decision to remand this matter is tied to deficiencies in the Immigration Judge's decision"

---

[2] We review due process claims de novo.  See Ali v. U.S. Att'y Gen., 443 F.3d 804, 808 (11th Cir. 2006) (per curiam).

11

related to the IJ's insufficient factual findings and legal conclusions. AR at 107. The remand "for further proceedings" thus did not mandate a new hearing but was instead "necessary for the preparation of a new decision by the Immigration Judge." Id. at 107-08.

Moreover, we agree with the BIA that no prejudice has been shown by the absence of another hearing. To prevail on a due process challenge, an alien must show substantial prejudice – namely, that the outcome would have differed "in the absence of the alleged procedural deficiencies." Patel v. U.S. Att'y Gen., 334 F.3d 1259, 1263 (11th Cir. 2003). In this case, the IJ on remand considered all the evidence admitted at the 2006 evidentiary hearing, plus further background materials and an uncle's affidavit that Brutus submitted in 2008. Brutus does not specify what additional evidence she would have presented on remand, other than a vague reference to her own "testimony . . . to update her claim of a well-founded fear of future persecution." Principal Brief for Petitioner at 26-27. This speculative assertion is insufficient to demonstrate that the outcome of the proceedings would have changed had a second hearing been held. Moreover, given that the BIA did not affirm the IJ's adverse credibility finding, that finding had no consequence on the outcome of the case. Absent a showing of substantial prejudice, Brutus' due process claim must fail. See Patel, 334 F.3d at 1263; Ibrahim, 821 F.2d at 1550.

12

### III. CONCLUSION

The record supports the BIA's determination that Brutus was not entitled to asylum based on her claims of persecution on account of her imputed political opinion. Substantial evidence also supports the BIA's denial of withholding of removal under the INA or the CAT. Finally, we find no due process violation occurred as a result of the IJ's failure to hold another evidentiary hearing upon remand of her case. We therefore DENY Brutus' petition for review.

**PETITION DENIED.**