[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-10351
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 31, 2010
JOHN LEY
CLERK

Agency No. A094-889-301

TIGRAN NIKOGHOSYAN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(August 31, 2010)

Before EDMONDSON, HULL and MARTIN, Circuit Judges.

PER CURIAM:

Tigran Nikoghosyan, an Armenian citizen, petitions for review of the Board

of Immigration Appeals's ("BIA") order denying his motion to reopen his removal proceedings. After review, we deny in part and dismiss in part Nikoghosyan's petition.[1]

## I. BACKGROUND

### A. Removal Proceedings

After entering the United States on a non-immigrant visa, Nikoghosyan filed an application for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"). Nikoghosyan claimed he had suffered past persecution and feared future persecution in Armenia because of his mixed Azerbaijani ethnicity. Nikoghosyan claimed that, between 1991 and 2005, his family suffered threats, brutal attacks and killings at the hands of anti-Azerbaijani Armenians and that he was beaten three times, his parents were killed and his sister was abducted.

On May 23, 2007, following a hearing, an Immigration Judge ("IJ") denied Nikoghosyan all relief. The IJ found that Nikoghosyan was not credible and had failed to provide sufficient corroborating evidence. On July 30, 2008, the BIA

---

[1]We review the denial of a motion to reopen for abuse of discretion. Abdi v. U.S. Att'y Gen., 430 F.3d 1148, 1149 (11th Cir. 2005). Review is "limited to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." Id. (quotation marks omitted).

adopted and affirmed the IJ's decision to the extent it was based on an adverse credibility determination. Nikoghosyan did not file a petition for review of the BIA's July 30, 2008 decision with this Court.

**B.    First Motion to Reopen or Reconsider**

On October 29, 2008, Nikoghosyan filed his first motion to reopen his removal proceedings or reconsider the BIA's July 30, 2008 decision, arguing that he was eligible for an adjustment of status due to his October 2, 2008 marriage to a United States citizen. On April 17, 2009, the BIA denied the motion as untimely and declined to exercise its discretionary authority to reopen removal proceedings sua sponte. Again, Nikoghosyan did not petition this Court for review of the BIA's April 17, 2009 decision.

**C.    Second Motion to Reopen or Reconsider**

On June 24, 2009, Nikoghosyan filed another motion to reopen or reconsider with the BIA. Nikoghosyan asked the BIA to reconsider its denial of his first motion to reopen as untimely. Nikoghosyan attached documents indicating that the UPS flight carrying his first motion to reopen had been delayed due to mechanical problems.

Alternatively, Nikoghosyan asked the BIA to reopen his removal proceedings based on his recent marriage to a United States citizen and changed

3

country conditions in Armenia.  Nikoghosyan submitted affidavits from a country expert and two Armenian friends and several articles about Armenia.

Nikoghosyan's country expert described the centuries-old conflict between Christian Armenians and Muslim Azeris.  Since the war between Armenia and Azerbaijan from 1988 to 1992, only a small number of Muslims remain in Armenia, and they hide their religious beliefs.  The expert opined that individuals of mixed Azeri and Armenian heritage are primary targets for Armenian nationalists and are a source of shame and conflict in Armenian clans.  According to the expert, a new law on religion went into effect in Armenia in 2009 that would (1) criminalize unauthorized missionary activities, (2) impose more stringent registration requirements on religious communities and (3) allow the Christian Armenian Apostolic Church to cooperate with the Armenian government on some occasions.  The expert opined that this new law would lead to more persecution and oppression of religious minorities.

Nikoghosyan's friend, Artashes Hrantovich Khachatryan, averred that persecution of people with mixed Armenian and Azerbaijani ethnicity began in 1991 and still exists in Armenia.  Khachatryan knew that many of Nikoghosyan's family members were killed "due to their mixed ethnicity and a blood feud."  Another friend, Rudolf Amiryan, averred that during a September 2007 visit to

4

Armenia, a friend's son was attacked and beaten because of his mixed ethnicity.

On January 8, 2010, the BIA denied the motion to reconsider and to reopen. The BIA denied the motion to reconsider as untimely. It denied the motion to reopen as untimely and numerically barred and because Nikoghosyan had not shown material, changed conditions in Armenia. The BIA noted that Nikoghosyan's evidence was not material because it did not overcome the IJ's adverse credibility finding. The BIA again denied Nikoghosyan's request to reopen to allow him to apply for adjustment of status because Nikoghosyan had not shown exceptional circumstances warranting sua sponte reopening. On January 27, 2010, Nikoghosyan filed this petition for review.

## II.  DISCUSSION

### A.  Motions to Reopen and to Reconsider

An alien may file only one motion to reopen removal proceedings, and that motion must "state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material."  Immigration and Nationality Act ("INA") § 240(c)(7)(A), (B), 8 U.S.C. § 1229a(c)(7)(A), (B).  Generally, the motion to reopen must be filed within ninety days of the final administrative removal order.  INA § 240(c)(7)(C)(i), 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2).  However, the ninety-day deadline and

one-motion limit do not apply if the motion to reopen is based on changed country conditions. INA § 240(c)(7)(C)(ii), 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii).

Because motions to reopen removal proceedings are disfavored, the movant bears a "heavy burden." Zhang v. U.S. Att'y Gen., 572 F.3d 1316, 1319 (11th Cir. 2009). To meet the exception to the numerical and time bars, the movant must show that there is new evidence that is material and was not available and could not have been discovered or presented at the removal hearing. See 8 C.F.R. § 1003.2(c)(1); see also Verano-Velasco v. U.S. Att'y Gen., 456 F.3d 1372, 1376 (11th Cir. 2006); Abdi, 430 F.3d at 1149. Evidence is not "new" if it was available and could have been presented at the alien's former hearing. Verano-Velasco, 456 F.3d at 1377. To be "material," the evidence must be the kind that, if the proceedings were reopened, would likely change the result in the case. See Ali v. U.S. Att'y Gen., 443 F.3d 804, 813 (11th Cir. 2006). Thus, the BIA may deny a motion to reopen because the alien failed to submit evidence that was material and previously unavailable. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1302 (11th Cir. 2001).

A motion to reconsider must be filed within thirty days of the order. INA § 240(c)(6)(B), 8 U.S.C. § 1229a(c)(6)(B). "A party may file only one motion to

6

reconsider any given decision and may not seek reconsideration of a decision denying a previous motion to reconsider." 8 C.F.R. § 1003.2(b)(2).

**B.     Nikoghosyan's Motions**

Initially, we note that Nikoghosyan does not contest that his second, June 24, 2009 motion to reopen/reconsider was untimely and numerically barred. Nikoghosyan's June 24, 2009 motion was his second motion to reopen and was filed more than ninety days after the BIA's July 30, 2008 decision. Thus, the only issue on appeal is whether Nikoghosyan presented material and previously unavailable evidence of changed country conditions to overcome the time and numerical bars.

The BIA did not abuse its discretion in denying Nikoghosyan's June 24, 2009 motion to reopen. First, Nikoghosyan did not show that the affidavits from his country expert and his Armenian friends previously were unavailable. Second, the affidavits and articles do not suggest a material change has occurred in Armenia since his removal proceedings ended in July 2008. At most, his evidence shows that for people of Azerbaijani ethnicity conditions in Armenia continue to be bad rather than that they have materially worsened.

Furthermore, Nikoghosyan's evidence did not undermine the IJ's adverse credibility finding. The IJ determined that Nikoghosyan was not credible due to

7

inconsistencies in his account, his demeanor during his testimony, and his lack of specificity about, or corroborative evidence for, his account of various attacks on his family members in Armenia. In making her credibility determination, the IJ also was concerned with Nikoghosyan's failure to provide documentary evidence of his accounts of his parents' deaths and his sister's disappearance. The BIA concluded that Nikoghosyan's "new" evidence, which did not address any of the IJ's concerns, was not sufficient to overcome the IJ's credibility determination. Under the circumstances, we cannot say the BIA's conclusion was arbitrary and capricious.[2]

Nikoghosyan argues that the BIA should have exercised its discretionary authority under 8 C.F.R. § 1003.2(a) to reopen his immigration proceedings sua sponte. We lack jurisdiction to review the BIA's denial of such discretionary relief. See Lenis v. U.S. Att'y Gen., 525 F.3d 1291, 1294 (11th Cir. 2008). Thus, we dismiss Nikoghosyan's petition to the extent he challenges the BIA's refusal to sua sponte reopen his removal proceedings.

---

[2]Nikoghosyan argues that his "new" evidence in combination with his original evidence presented to the IJ established past persecution and a well-founded fear of future persecution. The BIA affirmed the IJ's denial of Nikoghosyan's application for asylum, withholding of removal and CAT relief on July 30, 2008. Nikoghosyan did not file a petition for review with this Court within thirty days of that BIA decision. Thus, we lack jurisdiction to consider the merits of that decision. See INA § 242(a)(1), (b)(1), 8 U.S.C. § 1252(a)(1), (b)(1); Dakane v. U.S. Att'y Gen., 399 F.3d 1269, 1272 n.3 (11th Cir. 2005).

**DENIED IN PART; DISMISSED IN PART.**