[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 12, 2010
JOHN LEY
CLERK

No. 10-11068
Non-Argument Calendar
_____

Agency No. A072-436-707

YOUSSEF FAHMY BOULES,
a.k.a. Youssef Fahmy Salib Boules,
NOURHAIM ADIB MENKARIOS,
a.k.a. Naraine Aiden Nacarious,
a.k.a. Nourham Adib Boutros Mankarious,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(October 12, 2010)

Before CARNES, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Youssef Fahmy Boules and his wife Nourhaim Adib Menkarios (collectively "the petitioners"), natives and citizens of Egypt, petition for review of the Board of Immigration Appeals' ("BIA") order denying their second motion to reopen their removal proceedings, pursuant to 8 C.F.R. § 1003.2(a). After review, we deny the petition for review.[1]

## I. BACKGROUND

### A. 1991 Asylum Application

In August 1991, Boules and his wife Menkarios entered the United States on non-immigrant visas with authorization to remain until February 1, 1992. In November 1991, Boules filed an application for asylum, listing his wife as a derivative beneficiary. Boules claimed that he had suffered past persecution and feared future persecution by Islamic fundamentalists in Egypt because he is a Coptic Christian.

---

[1]We review the denial of a motion to reopen for abuse of discretion. Abdi v. U.S. Att'y Gen., 430 F.3d 1148, 1149 (11th Cir. 2005). Review is "limited to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." Id. (quotation marks omitted).

According to Boules's 1991 asylum application: (1) in 1989, he was threatened by the "heads of Gamaat Islamiah" after he opened a law practice in Egypt representing Christians who were tortured and persecuted; (2) in June 1990, three bearded men in Islamic dress came to his law office, threw him to the floor, damaged his office and destroyed his client files; and (3) in May 1991, Muslim extremists disturbed his wedding at a Christian church and, days later, broke the windows of the car he and his wife were riding in because there was a cross hanging from the mirror. Boules reported these incidents to Egyptian police, but nothing was done. Because of these attacks, Boules felt he would be killed if he remained in Egypt. Boules went to the U.S. embassy and obtained a visa to visit the United States.

**B.    2005 Removal Proceedings & 2008 Removal Order**

In November 2005, the Department of Homeland Security ("DHS") served Boules and his wife Menkarios with Notices to Appear ("NTA"), charging them with removability under Immigration and Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for overstaying their 1991-92 visitor visas.[2] At an initial hearing, Boules and Menkarios admitted the allegations in the NTAs and

---

[2]In October 2005, an asylum officer interviewed Boules and referred Boules's asylum application to an Immigration Judge ("IJ") for adjudication in removal proceedings. See 8 C.F.R. § 208.14(c).

conceded removability. In July 2006 and March 2007, respectively, Boules and Menkarios filed motions for cancellation of removal asserting that their removal would result in exceptional and extremely unusual hardship to their two children born in the United States.

On February 6, 2008, the IJ held a hearing at which Boules, Menkarios and their son Mina testified.[3] The IJ then denied Boules's claims for asylum, withholding of removal and relief under the Convention Against Torture ("CAT"), denied Boules's and Menkarios's requests for cancellation of removal and granted Boules's request for voluntary departure on or before March 6, 2008. Among other things, the IJ determined that Boules had not shown that he suffered past persecution or a well-founded fear of future persecution in Egypt based on his religion as a Coptic Christian. The IJ found that Boules had "embellish[ed]" Egypt's country conditions and the treatment of Coptic Christians in Egypt. The IJ noted that the State Department Profile and Country Report, the Library of Congress Report and the International Religious Freedom Report contradicted Boules's and Menkarios's claims of forced conversion, kidnapping and rape of Coptic Christians and showed that the Egyptian government vigorously prosecuted

---

[3]Mina Boules was born in New Jersey on January 28, 1992. Marina Boules was born in Georgia on December 3, 1995. Thus, Mina was 16 years old and Marina was 12 years old at the time of the removal hearing.

Islamic extremists when they tried to mistreat Coptic Christians.  The IJ found that these reports provided a more accurate description of Egypt's conditions given that Boules and Menkarios had not been in Egypt for 17 years.

On December 4, 2008, the BIA adopted and affirmed the IJ's decision.  The BIA explained that the IJ had not discredited Boules's and Menkarios's testimony, but rather had concluded that this testimony did not establish statutory eligibility for asylum and withholding of removal or the requisite hardship for cancellation of removal.  The BIA gave the petitioners thirty days to voluntarily depart the United States.  The petitioners did not petition for review of this December 4, 2008 final order of removal.

## B.    First Motion to Reopen in 2009

On January 6, 2009, petitioners Boules and Menkarios filed a "Motion to Reconsider" the BIA's December 4, 2008 order.  The petitioners argued that because their children were older and largely assimilated into American culture, they had satisfied the hardship requirement for cancellation of removal.  On June 16, 2009, the BIA denied the motion to reconsider as untimely, and construed the motion as a timely-filed motion to reopen.  The BIA denied the motion to reopen because (1) most of the documents attached to the motion (primarily the children's school and church records) predated the IJ's decision and the petitioners had not

5

shown why the evidence was not previously available; and (2) the remaining documents did not satisfy the hardship requirement. The petitioners did not file a petition for review of this June 16, 2009 BIA order in this Court.

## C.    Second Motion to Reopen in 2009

On July 28, 2009, petitioners Boules and Menkarios filed a second motion to reopen. The petitioners argued that they were excused from the time and numeric bars because they had shown changed country conditions in Egypt regarding the government's unwillingness to protect Coptic Christians. The second motion to reopen alleged new and previously unavailable evidence (1) that in January 2009 an Islamic group had attacked Boules's law office in Cairo and left a written death threat for Boules and his family and (2) of the extreme and unusual hardship their U.S.-born children faced if their parents were returned to Egypt.

The petitioners attached, inter alia: (1) a copy of an undated letter from an unnamed Islamic group threatening Boules and his family with bodily harm and death if they returned to Egypt; (2) a copy of an Egyptian police report indicating that on January 27, 2009, Boules's law office in Egypt was vandalized by Islamic extremists who had left Boules the threatening letter; (3) an article from the U.S. Copts Association website reporting the April 2009 destruction of the office of a

6

doctor who was an Egyptian union president for human rights; (4) an October 2005 affidavit of Nabil Fahmy Boules, Boules's brother, stating his belief that his brother would be killed if he returned to Egypt because of the incidents that occurred there in 1990 and 1991; (5) an undated asylum approval letter issued to Nabil Boules; (6) a May 2009 Department of State report stating that the Egyptian "government's respect for freedoms of the press, association and religion declined in 2008"; (7) 2009 media reports documenting decades of sporadic flare-ups of violence by Muslims against Coptic Christians in Egypt; (8) an October 2005 article from the U.S. Copts Association website about a protest by Muslims outside a Coptic Church in Alexandria, Egypt that resulted in a riot; (9) a July 2008 letter from Joel Gordon, Professor of Middle Eastern studies at the University of Arkansas, discussing general conditions in Egypt and between Egyptian Muslims and Copts and expressing his opinion that relocating the petitioners' children to Egypt would constitute a hardship;[4] and (10) March 2007

---

[4]Among other things, Professor Gordon noted that: (1) Alexandria, where the petitioners would reside, has been "a place of recent tensions," but did not elaborate on this point; (2) "[f]or a variety of reasons," Egyptian authorities' response to harassment of Coptic Christians is often negligible; (3) although the threats the petitioners' children fear, such as kidnapping and forced conversion, are real, they "are not, contrary to their understanding, daily threats to the general Coptic public", but rather "flashpoints, the kinds of potentially violent encounters that lurk at the edges of extremism at periods of heightened tensions, and in places in which lawless elements have gained a degree of autonomy in delivering and carrying out threats"; and (4) given the recent attack on Boules's law office, the Boules family may be "caught amidst such troubles," and the children may face "harassment, intimidation, perhaps violence" in Egypt.

psychological evaluations of the petitioners' children concluding that they would suffer emotional or psychological trauma if they are either separated from their parents or required to move to Egypt with their parents.

On February 4, 2010, the BIA denied the petitioners' second motion to reopen their asylum proceedings as time- and numerically-barred. The BIA found that the petitioners had not shown changed country conditions that would excuse them from the time and number limitations on motions to reopen. Specifically, the BIA found that the petitioners' evidence showed that mistreatment of Coptic Christians in Egypt has occurred for decades and did not show that conditions for Coptic Christians had materially deteriorated since the removal hearing in February 2008.

Additionally, the BIA concluded that the petitioners' new evidence did not establish a prima facie claim for asylum, withholding of removal or CAT relief. The BIA found that the petitioners' evidence of the recent ransacking of Boules's law office in Egypt did not show that the threats and harassment would "escalate to mistreatment of sufficient severity to constitute persecution if they return to Egypt." The BIA noted that the report of a similar incident at a doctor's office had not resulted in any physical harm to the doctor, that Boules had not suffered past

persecution and that Boules had not shown that he could not relocate to another area in Egypt.

As to the petitioners' request for cancellation of removal, the BIA concluded that the petitioners' motion to reopen was barred because they failed to file it within the thirty-day voluntary departure deadline, which made them statutorily ineligible for cancellation of removal. See INA § 240B(d)(1)(B), 8 U.S.C. § 1229c(d)(1)(B) (providing that alien who fails to depart voluntarily within the time specified is ineligible for cancellation of removal for ten years). On March 2, 2010, the petitioners filed this petition for review of the BIA's February 4, 2010 order.

## II.  DISCUSSION

An alien may file only one motion to reopen removal proceedings, and that motion must "state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material."  INA § 240(c)(7)(A), (B), 8 U.S.C. § 1229a(c)(7)(A), (B).  Generally, the motion to reopen must be filed within ninety days of the final administrative removal order.  INA § 240(c)(7)(C)(i), 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2).  However, the ninety-day deadline and one-motion limit do not

9

apply if the motion to reopen is based on changed country conditions. INA § 240(c)(7)(C)(ii), 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii).

Because motions to reopen removal proceedings are disfavored, the movant bears a "heavy burden." Zhang v. U.S. Att'y Gen., 572 F.3d 1316, 1319 (11th Cir. 2009). To succeed on a motion to reopen, the movant must show that there is new evidence that is material and was not available and could not have been discovered or presented at the removal hearing. See 8 C.F.R. § 1003.2(c)(1); see also Verano-Velasco v. U.S. Att'y Gen., 456 F.3d 1372, 1376 (11th Cir. 2006); Abdi, 430 F.3d at 1149. Evidence is not "new" if it was available and could have been presented at the alien's former hearing. Verano-Velasco, 456 F.3d at 1377. To be "material," the evidence must be the kind that, if the proceedings were reopened, would likely change the result in the case. See Ali v. U.S. Att'y Gen., 443 F.3d 804, 813 (11th Cir. 2006).

Here, the petitioners do not dispute that their second motion to reopen was untimely and numerically barred.[5] Thus, the only issue on appeal is whether the

[5]We do not address the petitioners' argument that the BIA abused its discretion in construing their untimely motion to reconsider as a (first) motion to reopen. We lack jurisdiction to review the BIA's June 16, 2009 order denying their first motion to reconsider/motion to reopen because the March 2, 2010 petition for review was not filed within thirty days of the entry of that order. See INA § 242(b)(1), 8 U.S.C. § 1252(b)(1); Dakane v. U.S. Att'y Gen., 399 F.3d 1269, 1272 n.3 (11th Cir. 2005) (explaining that period for filing petition for review "is mandatory and jurisdictional, [and] is not subject to equitable tolling" (internal quotation marks omitted)). For the same reason, we lack jurisdiction to review the BIA's December 4, 2008

10

petitioners presented material and previously unavailable evidence of changed country conditions to overcome the time and numerical bars.

We agree with the BIA that most of the petitioners' evidence does not show a material change has occurred in Egypt since their removal proceedings in February 2008. Most of their evidence shows that Coptic Christians continue to be subjected to sporadic incidents of harassment and violence by Islamic extremists, not that such mistreatment has recently escalated. Additionally, some of the petitioners' evidence pre-dates their February 2008 removal hearing, and they do not explain how that evidence was previously unavailable.

The petitioners' evidence of the January 2009 attack on Boules's law office and death threat does post-date the removal hearing. The BIA did not specifically address whether this evidence showed a change in country conditions. See Zhang, 572 F.3d at 1319 (explaining that "[a]n alien cannot circumvent the requirement of changed country conditions by demonstrating only a change in her personal circumstances"). Rather, the BIA concluded that this evidence did not warrant reopening because it did not establish a well-founded fear of persecution. See Chacku v. U.S. Att'y Gen., 555 F.3d 1281, 1286 (11th Cir. 2008) (explaining that

_____

decision affirming the IJ's denial of Boules's application for asylum, withholding of removal and CAT relief.

11

the BIA may deny a motion to reopen because of the failure to introduce evidence that is material and previously unavailable or the failure to establish a prima facie case or as an exercise of discretion). We agree.

This Court has concluded that threats, even in conjunction with minor physical attacks or brief detentions, do not rise to the level of persecution. See, e.g., Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1174 (11th Cir. 2008); Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1237-38 (11th Cir. 2006); Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005). As the BIA pointed out, Boules was never physically harmed when he lived in Egypt, has been outside Egypt for nineteen years, and did not show that he was unable to avail himself of protection of Egyptian authorities or that he could not relocate within Egypt to avoid the threat of future harm. Under the circumstances, the BIA did not abuse its discretion in denying the petitioners' second motion to reopen because this evidence did not establish a prima facie claim of future persecution.

Finally, we reject the petitioners' claim that the BIA failed to consider all of their evidence. With the exception of the children's psychological evaluations, the BIA addressed all the evidence submitted with the second motion to reopen and explained why it failed to show a material change in country conditions. The BIA was not required to analyze each piece of evidence individually, so long as its

decision gave reasoned consideration to the petitioners' motion and made adequate findings, which it did. See Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1374 (11th Cir. 2006).[6] For all these reasons, the BIA did not abuse its discretion in denying the petitioners' second motion to reopen.

**PETITION DENIED.**

---

[6]On appeal, the petitioners do not challenge the BIA's ruling that, to the extent the petitioners sought to reopen their requests for cancellation of removal, their motion was barred by their failure to file it within the time for voluntary departure. Thus, they have abandoned this issue. See Sepulveda, 401 F.3d at 1228 n.2 (explaining that a petitioner abandons an issue by failing to offer argument on that issue).