[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-14371
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 22, 2010
JOHN LEY
CLERK

Agency No. A098-869-003

NADEGE HYPPOLITE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(June 22, 2010)

Before EDMONDSON, BIRCH and KRAVITCH, Circuit Judges.

PER CURIAM:

Nadage Hyppolite, a native and citizen of Haiti, petitions this court for

review of the Board of Immigration Appeals' ("BIA") order affirming the

Immigration Judge's ("IJ") order of removal. For the reasons that follow, we deny the petition in part and dismiss it in part.

Hyppolite entered the United States in July 2005, and filed an application for asylum, withholding of removal, and relief under the United Nations Convention against Torture ("CAT") the following month. This application never made it through the system, and in 2007, after receiving a notice to appear charging her as removable due to her un-admitted alien status, Hyppolite filed a replacement application.[1] In this application, Hyppolite explained that she had been persecuted on account of her political opinion. According to the application, Hyppolite had lived in Thomazeau, Haiti, her entire life. Her parents, who also lived in Thomazeau, joined the anti-Lavalas group OPL in 1995. Although she was not a member of OPL, Hyppolite would sometimes attend meetings with her parents.

In February 2005, Lavalas supports came to her home to recruit her and, when she refused, they beat her severely. A few months later the Lavalas members returned looking for her parents. When Hyppolite told them her parents were not home, the men beat her until she was unconscious. Following this attack, Hyppolite went into hiding at a friend's house before leaving Haiti. In support of

---

[1] At the removal hearing, the government conceded that Hyppolite filed a timely application for relief from removal in 2005. Nevertheless, the IJ questioned whether the asylum application was timely. The BIA did not address the timeliness issue when it dismissed the appeal.

her application, Hyppolite submitted affidavits from her father and a family friend. Both were notarized in Thomazeau. Although both mentioned the danger Hyppolite faced if she returned to Haiti, neither affidavit made reference to the alleged beatings.

At the removal hearing, Hyppolite testified that she constantly had problems with people who knew her parents were involved in OPL and that she was beaten on two occasions by Lavalas members. After the second beating left her unconscious, she went into hiding. She did not report the beatings to the police, go to the hospital, or take photographs of her injuries, but instead was treated by a herbalist following each beating. She was able to recover from the first beating in two days, but the second beating required treatment and recovery of two weeks. After she fled Haiti, her parents relocated from Thomazeau to Artibonite. They had since moved, and Hyppolite did not know their whereabouts.

Hyppolite could not explain why her supporting affidavits did not mention the beatings. When questioned why her father's affidavit was notarized in Thomazeau when her parents had left Thomazeau before the affidavit was submitted, Hyppolite responded it was because she was from Thomazeau.

The IJ denied relief, finding that Hyppolite lacked credibility because there was no corroborating evidence of her political involvement or the alleged beatings, the testimony about her parent's involvement in OPL was generalized, the

3

supporting affidavits did not mention the beatings, and Hyppolite could not explain why the affidavit was notarized in Thomazeau. Accordingly, Hyppolite had not shown past persecution or a well-founded fear of future persecution on account of a protected ground.

Hyppolite appealed to the BIA, which affirmed the IJ's adverse credibility finding. This petition for review followed.

On appeal, Hyppolite makes two arguments.[2] First, Hyppolite asserts that substantial evidence does not support the IJ's findings regarding the underlying merits of her asylum and withholding-of-removal claims. Second, Hyppolite alleges violations of her due process rights. We address each in turn.

1.      Asylum and Withholding of Removal

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). To the extent that the BIA adopts the IJ's reasoning, we review the IJ's decision as well. *Id.* Here, the BIA issued its own opinion, and, although it agreed with the IJ's adverse credibility finding, it did not expressly adopt the rest of the IJ's opinion. Accordingly, we review both the IJ's and BIA's opinions regarding the dispositive adverse credibility determination, but

---

[2] Because Hyppolite fails to challenge the denial of her CAT claim on appeal, she has abandoned that issue. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

4

not any other aspect of the underlying merits of Hyppolite's claims. *See Al Najjar*, 257 F.3d at 1284.

We review factual findings and credibility determinations under the substantial evidence test. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005). Under this test, we must affirm the IJ's and BIA's decisions if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Al Najjar*, 257 F.3d at 1284 (quotation omitted). "To reverse a factual finding . . . , [we] must find not only that the evidence supports a contrary conclusion, but that it compels one." *Farquharson v. U.S. Att'y Gen.*, 246 F.3d 1317, 1320 (11th Cir. 2001). The fact that evidence in the record may also support a conclusion contrary to the administrative findings is not enough to justify a reversal. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*).

An alien who arrives in or is present in the United States may apply for asylum. 8 U.S.C. § 1158(a)(1). The Attorney General or Secretary of the Department of Homeland Security has discretion to grant asylum if the alien qualified as a "refugee." 8 U.S.C. § 1158(b)(1). A "refugee" is:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of . . . political opinion[.]

5

8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory "refugee" status. 8 C.F.R. § 208.13(a); *Al Najjar*, 257 F.3d at 1284. To establish eligibility, the alien must establish, with specific and credible evidence, (1) past persecution on account of a statutorily listed factor, or (2) a well-founded fear that the statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a) and (b); *Al Najjar*, 257 F.3d at 1287.

Like any finding of fact, a credibility determination may not be overturned unless the record compels it. *Forgue*, 401 F.3d at 1287. "Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1255 (11th Cir. 2006). For applications such as Hyppolite's, to which the REAL ID Act applies, the IJ may make an adverse credibility finding based on the "totality of the circumstances" and deny a claim based on inconsistencies, inaccuracies, and falsehoods contained in the evidence, without regard to whether they go to the "heart" of the claim. 8 U.S.C. § 1158(b)(1)(B)(iii), as amended by the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302, § 101(a) (2005). If the IJ and the BIA explicitly determine that the alien is not credible, they must give specific, cogent reasons for the adverse credibility determination. *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1231 (11th Cir. 2006). "The burden then shifts to the alien to show that the IJ's credibility determination was not supported by specific,

6

cogent reasons or was not based on substantial evidence." *Id.* (quotation omitted). The IJ and the BIA may deny asylum based solely on an adverse credibility determination, especially when the alien does not produce corroborating evidence. *Ruiz*, 440 F.3d at 1255. However, if an applicant produces evidence other than her testimony, "it is not sufficient for the IJ to rely solely on an adverse credibility determination in those instances." *Forgue*, 401 F.3d at 1287. "The weaker an applicant's testimony . . . the greater the need for corroborative evidence." *Yang v. U.S. Att'y Gen*, 418 F.3d 1198, 1201 (11th Cir. 2005).

Here, we conclude that adverse credibility determination was supported by substantial evidence. The IJ provided specific and cogent reasons for finding Hyppolite lacked credibility. Specifically, the IJ noted that Hyppolite gave only generalized statements about her parent's involvement with the OPL, Hyppolite alleged that she had been beaten severely on two occasions but had not gone to the hospital or filed a police report, and the supporting affidavits made no mention of the beatings. The IJ expressed concern over the lack of corroborating evidence and found it unlikely that Hyppolite could have recovered from a severe beating in only two days. Hyppolite has not shown that the IJ's determination was unsupported by substantial evidence. This adverse credibility determination alone is sufficient to uphold the dismissal of Hyppolite's asylum and withholding claims. Accordingly, we deny the petition in this regard.

7

2.     Due Process

We review constitutional challenges *de novo*. *Ali v. U.S. Att'y Gen.*, 443 F.3d 804, 808 (11th Cir. 2006). "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993). Accordingly, aliens must receive "notice and opportunity to be heard in their removal proceedings." *Fernandez-Bernal v. U.S. Att'y Gen.*, 257 F.3d 1304, 1310 n.8 (11th Cir. 2001). To prevail on a due process challenge, an alien must show substantial prejudice such that the outcome would have differed "in the absence of the alleged procedural deficiencies." *See Patel v. U.S. Att'y Gen.*, 334 F.3d 1259, 1263 (11th Cir. 2003).

In this case, Hyppolite received notice and had an opportunity to be heard in front of the IJ and through her appeal to the BIA in the removal proceedings. Contrary to Hyppolite's contentions, the BIA did not erroneously deprive her of due process by failing to address several of her arguments alleging the IJ's errors because the BIA relied solely on the IJ's dispositive adverse credibility determination in dismissing her petition. Thus, we deny the petition as to these claims.

We lack jurisdiction to address Hyppolite's assertion that the IJ was biased because she did not raise that issue on appeal to the BIA and thus has not exhausted it. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th

8

Cir. 2006); 8 U.S.C. § 1252(d)(1).  Accordingly, we dismiss the petition as to this claim.

**DENIED IN PART, DISMISSED IN PART.**