[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15513
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 30, 2010
JOHN LEY
CLERK

Agency No. A098-552-714

FLORANCE LOUIS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(June 30, 2010)

Before BLACK, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

Florance Louis seeks review of the Board of Immigration Appeal's ("BIA")

decision affirming the immigration judge's ("IJ") denial of her application for

asylum and withholding of removal under the Immigration and Nationality Act

("INA").[1]  After review, we deny the petition for review.

## I. BACKGROUND

### A. Louis's Asylum Application

In June 2004, Louis, a citizen of Haiti, unlawfully entered the United States.

In August 2004, Louis filed an asylum application, claiming that the Lavalas Party

of former Haitian President Jean-Bertrand Aristide had attempted to kill her father

and had harassed her brother.

The Department of Homeland Security charged Louis with removability as

an alien present in the United States without being admitted or paroled.  At an

initial hearing, Louis conceded removability.  Louis filed a supplemental asylum

application describing the Lavalas government's mistreatment of her father and

brother.  According to Louis, her brother was detained and beaten for two days

after he criticized the Lavalas government at a political demonstration in 2003.  In

2004, Lavalas supporters, called the Chimeres, went looking for and tried to kill

---

[1]Louis makes a passing reference to the BIA's denial of her claim for protection under the Convention Against Torture ("CAT"), but offers no argument on this issue.  Accordingly, Louis has abandoned her CAT claim. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

her father because he was involved with the Democratic Convention for Unity ("KID") Party. Louis claimed that she feared returning to Haiti because the Chimeres Lavalas would identify her as a KID party member and kill her. Louis contended that the current Haitian government could not protect her because President Rene Preval is a former Lavalas official.

Louis submitted newspaper articles indicating that from 2004, when Aristide was removed from power, until 2006, armed pro-Aristide gangs connected to the Lavalas Party engaged in a campaign of violence in an effort to destabilize the new government. One article written in January 2007 stated that, although Haiti remained unsettled, the violence had decreased because of joint operations between the Haitian government and the United Nations. The State Department's 2007 Country Report on Human Rights indicated that neither the Haitian government nor its agents had engaged in politically motivated killings and disappearances. Although the Haitian government continued to have problems addressing killings by armed gangs, the government was working with the United Nations Stabilization Mission to suppress gang-related violence.

At a merits hearing, Louis testified that her brother was arrested by police and detained after participating in a political demonstration in 2003. Louis's brother was held for two days, during which he was beaten and whipped. After he was released, Louis's brother fled Haiti.

3

Louis also testified that, in January 2004, six members of the Chimeres Lavalas came to her family home looking for her and her father and saying that they "need[ed] their bodies." When Louis overheard that they were looking for her, she fled the house. Louis stayed with a nearby neighbor for approximately three months before leaving Haiti for the Dominican Republic in April 2004. Two months later, in June 2004, Louis came to the United States. Other than the January 2004 incident, Louis admitted that nothing happened to her. Louis's father also fled Haiti, and she has not heard from him since. Louis's mother continues to reside in their hometown in Haiti, but has moved to a new residence.

## B.    IJ's Initial Ruling

Following her removal hearing on May 31, 2007, the IJ denied Louis all relief. In so doing, the IJ applied the new credibility standards in the REAL ID Act of 2005 to Louis's supplemental asylum application and hearing testimony. Without explicitly discrediting Louis, the IJ stated that, based on certain inconsistencies, Louis was not entitled to a presumption of credibility and that Louis should have provided corroborating evidence to establish that her alleged persecution was on account of a protected ground.

On appeal, the BIA concluded that Louis's proceedings were not governed by the REAL ID Act because her original asylum application was filed before the

4

Act's effective date. The BIA remanded proceedings for the IJ to assess Louis's asylum application under the pre-REAL ID Act standards.

## C.    IJ's Ruling on Remand

On remand, the IJ set a hearing for February 18, 2009. Louis moved for a continuance to obtain additional testimony and corroborating evidence. The IJ denied the motion, stating that Louis had not indicated what additional evidence she would obtain that previously could not have been provided and that her request exceeded the scope of the BIA's remand.

The IJ did not conduct an additional evidentiary hearing and again denied Louis all relief. This time, the IJ discredited Louis's testimony based on various inconsistencies and found that Louis could have but did not provide corroborative evidence. The IJ also concluded that Louis did not establish past persecution, future persecution or harm on account of a protected ground. As for her future persecution claim, the IJ found that Louis subjectively feared returning to Haiti. However, noting that Louis lived unharmed in Haiti for three months after Lavalas Party members went to her house, the IJ concluded that Louis's fear was not well-founded.

## D.    BIA's Post-Remand Ruling

On appeal, the BIA did not address the IJ's credibility finding. Instead, the BIA concluded that, even assuming arguendo that Louis was credible, the IJ

correctly determined that the mistreatment Louis allegedly suffered did not rise to the level of persecution. The BIA agreed that Louis had not established a well-founded fear of future persecution, stressing "political changes in Haiti." The BIA rejected Louis's due process argument that the IJ failed to comply with its mandate by issuing a decision without holding a second hearing. The BIA explained that its remand order did not require the IJ to hear further testimony or accept additional evidence, but required the IJ to apply the correct legal standard to the facts in the record. Louis filed a petition for review.

## II. DISCUSSION

### A. Due Process Claim

Louis argues that the IJ violated her due process rights by failing to hold a second hearing after the BIA's remand.[2]

In the immigration context, "[d]ue process requires that aliens be given notice and an opportunity to be heard in their removal proceedings." Fernandez-Bernal v. Att'y Gen. of U.S., 257 F.3d 1304, 1310 n.8 (11th Cir. 2001). To establish a due process violation, an alien must show both a deprivation of liberty without due process and substantial prejudice. Garcia v. Att'y Gen. of U.S., 329 F.3d 1217, 1222 (11th Cir. 2003). To show substantial prejudice, the alien must

---

[2]We review constitutional claims de novo. Ali v. U.S. Att'y Gen., 443 F.3d 804, 808 (11th Cir. 2006).

show that the outcome would have differed "in the absence of the alleged procedural deficiencies." See Patel v. U.S. Att'y Gen., 334 F.3d 1259, 1263 (11th Cir. 2003).

Louis's due process claim fails for several reasons. First, the IJ gave Louis notice and an initial hearing. The BIA's remand did not require a new hearing, but only that the IJ apply the proper legal standards to Louis's claims.

Second, in any event, Louis has not shown that she was prejudiced by the IJ's failure to hold a second evidentiary hearing. Louis merely argues that she needed a second hearing to permit her to bolster her credibility. However, Louis has not specified what additional evidence she would have presented, much less shown that this evidence would have changed the outcome of her asylum application.

Third, the BIA's final removal order did not adopt the IJ's credibility finding, relying instead upon the conclusion that her alleged mistreatment did not rise to the level of persecution. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (explaining that we review only the BIA's decision, except to the extent it adopts the IJ's decision). Thus, any bolstering evidence Louis would have presented is immaterial to the outcome in this case. Accordingly, Louis's due process claim is without merit.

**B.    Asylum Claim**

To establish eligibility for asylum, an applicant must show either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. INA § 101(a)(42); 8 U.S.C. § 1101(a)(42)(A); Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230-31 (11th Cir. 2005); 8 C.F.R. § 208.13(a), (b).[3]   Although the INA does not define persecution, this Court has recognized that it is "an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation."  Sepulveda, 401 F.3d at 1231 (quotation marks omitted). Accordingly, this Court has concluded that threats in conjunction with brief detentions or a minor physical attack that does not result in serious physical injury do not rise to the level of persecution.  See, e.g., Djonda v. U.S. Att'y Gen., 514 F.3d 1168, 1171-72, 1174 (11th Cir. 2008) (36-hour detention, beating and threat of arrest); Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1290-91 (11th Cir. 2006) (5-day detention).[4]

---

[3]Similarly, an alien seeking withholding of removal must show that it is more likely than not that she will be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon being returned her country.  INA § 241(b)(3), 8 U.S.C. § 1231(b)(3); Sepulveda, 401 F.3d at 1232.  Because this standard is more stringent than the standard for asylum, an alien who fails to establish asylum eligibility generally cannot satisfy the higher burden for withholding of removal.  Id. at 1232-33.

[4]Because the BIA adopted the IJ's reasoning as to Louis's statutory eligibility, we review both the BIA's and the IJ's decisions.  See Al Najjar, 257 F.3d at 1284.  We review the factual determination that an alien is statutorily ineligible for asylum under the "highly deferential" substantial evidence test, which requires that we affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Id. at 1283-84

Here, substantial evidence supports the BIA's finding that Louis failed to establish past persecution or a well-founded fear of future persecution. According to Louis's testimony (which, like the BIA, we assume was credible), the Chimeres Lavalas once came to Louis's home looking for her, but never directly confronted, harmed or detained her. Under our binding precedent, without more, this one incident of threatening conduct does not constitute persecution. See Sepulveda, 401 F.3d at 1231.

Substantial evidence also supports the BIA's determination that Louis failed to demonstrate a well-founded fear of future persecution. Because Louis did not establish past persecution, she was not entitled to a presumption of a well-founded fear, see 8 C.F.R. § 208.13(b)(1), and had the burden to prove that she could not avoid persecution by relocating to another part of the country, see 8 C.F.R. § 208.16(b)(3)(i). To show a well-founded fear of future persecution, an alien must show "that his or her fear of persecution is subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289. The subjective component can be established by an applicant's credible testimony that she genuinely fears

_____

(quotation marks omitted). Thus, we reverse "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Mehmeti v. U.S. Att'y Gen., 572 F.3d 1196, 1199 (11th Cir. 2009).

9

persecution, while the objective component can be satisfied by establishing that she has "a good reason to fear future persecution." Id. (quotation marks omitted).[5]

Here, after Louis was threatened, she moved to a neighbor's home, where she remained unharmed for three months until she left Haiti. There was no evidence that the Chimeres Lavalas has persisted in looking for or threatening Louis. In fact, Louis's mother continues to reside unharmed in Louis's home town. Documentary evidence in the record indicates that, while conditions in Haiti remained unsettled, the Haitian government and its agents did not commit any politically motivated killings or kidnappings in 2007 and, in conjunction with the United Nations Stabilization Mission, has made some progress in suppressing gang-related violence. Under the circumstances, we cannot say the record compels a conclusion that Louis's fear of persecution is objectively reasonable.[6]

**PETITION DENIED**.

---

[5]We reject Louis's argument that either the IJ or the BIA misapplied the well-founded fear standard by requiring her subjective fear to also be objectively reasonable.

[6]Because Louis did not meet the burden of proof with respect to her asylum claim, she necessarily did not meet the higher burden of proof required for a withholding of removal claim. See Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1288 n.4 (11th Cir. 2005).