[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10359
Non-Argument Calendar
_____

Agency Case No. A089-345-526


NILAY ESIN,

                                                                    Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                                    Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(December 10, 2013)

Before MARTIN, JORDAN and DUBINA, Circuit Judges.

PER CURIAM:

Nilay Esin, a native and citizen of Turkey, petitions for review of the Board of Immigration Appeals' denial of her motion to reopen removal proceedings based upon newly discovered evidence that she asserts was not available at the

time of her prior hearing.  On appeal, Ms. Esin argues that the denial of her motion to reopen was arbitrary and capricious because the BIA failed to consider the new evidence she submitted in support of her motion to reopen, particularly failing to accord "special weight" to the United States Commission on International Religious Freedom's 2012 Annual Report ("USCIRF's 2012 Annual Report").  After a careful review of the record and the parties' arguments, we deny Ms. Esin's petition.

I

In July of 2006, Ms. Esin traveled to the United States as a nonimmigrant student authorized to remain in the country for a temporary period.  Eleven days later, she married a 42-year-old United States citizen.  On June 18, 2007, Ms. Esin divorced her husband.  Ms. Esin's ex-husband told the United States Citizenship and Immigration Services, under oath, that his marriage to Ms. Esin had been fraudulent and staged to procure immigration status for Ms. Esin.  Following the divorce, Ms. Esin joined a Baptist church in 2008 and was baptized on February 14, 2010.

In May of 2010, Ms. Esin filed an application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"), based largely upon her religion.  Ms. Esin asserted that her father was an alcoholic who suffered from major depressive disorder and that while she was

2

growing up in Turkey, he had sexually assaulted her and had beaten her and her siblings.  She feared this treatment would continue if she returned to Turkey, in part because of her conversion to Christianity.

An asylum officer referred Ms. Esin's application to an Immigration Judge ("IJ") after concluding that her application was untimely filed.  The Department of Homeland Security issued Ms. Esin a Notice to Appear, charging that she was removable pursuant to INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), as an alien who had remained in the United States longer than permitted.  Ms. Esin admitted the allegations contained in the Notice to Appear and conceded removability.

On June 20, 2011, the IJ conducted a merits hearing.  Ms. Esin testified that she was raised as a Muslim and converted to Christianity, that she started attending church two or three years before the hearing, that her family is still Muslim, and that her mother told her that if she returned to Turkey, her father would kill her because she had converted to Christianity.  Additionally, Ms. Esin testified that when she was 16 years old, her father raped her and that she never told anyone because her father threatened to kill her.  She also explained that she divorced her husband because he had cheated on her.

With respect to the treatment of religious minorities in Turkey, a 2010 State Department International Religious Freedom Report that was in evidence before the IJ provided, in relevant part, that the Turkish government generally respected

religious freedom in practice, though some Christians did face restrictions and occasional harassment for proselytizing. The 2010 Religious Freedom Report further indicated that people who converted from Islam sometimes experienced societal harassment and violence from relatives and neighbors and that Christians who engaged in religious advocacy were occasionally threatened or pressured by government and state officials.

Following the hearing, the IJ issued an oral decision denying Ms. Esin's application for asylum, withholding of removal, and CAT relief. Although the IJ found that Ms. Esin's application for relief was timely and that her conversion to Christianity was legitimate, he nevertheless denied the application because he found Ms. Esin not to be credible due to discrepancies in her testimony regarding her father and her apparently fraudulent marriage. Further, the IJ found that even if Ms. Esin was credible, her application would still be denied. First, Ms. Esin had not shown that she was a member of a particular social group. Second, in light of the 2010 Religious Freedom Report, Ms. Esin did not have an objectively reasonable well-founded fear of persecution based on her conversion to Christianity because the treatment of Christians in Turkey did not amount to persecution. Ms. Esin appealed the IJ's denial of asylum and withholding of removal to the BIA.

The BIA dismissed Ms. Esin's appeal, concluding that the IJ's adverse credibility determination was not clearly erroneous and agreeing with the IJ's finding that Ms. Esin had failed to establish a well-founded fear of persecution based on her conversion to Christianity. Relying on the 2010 Religious Freedom Report, the BIA concluded that, while Christians experienced harassment and discrimination in Turkey, that mistreatment did not rise to the level of persecution. The BIA further determined that because Ms. Esin had failed to satisfy the lower burden of proof required for asylum, it followed that she had also failed to satisfy the higher standard of eligibility for withholding of removal.

On October 9, 2012, Ms. Esin moved the BIA to reopen her removal proceedings. She asserted that she had new evidence that was unavailable at the time of her initial hearing, specifically the USCIRF's 2012 Annual Report, a January 2012 Report from Turkey's Association of Protestant Churches, a blog entry discussing the USCIRF's 2012 Annual Report, and a news article about the growing number of threats against Christian clerics in Turkey.

In pertinent part, the USCIRF's 2012 Annual Report placed Turkey onto a list of "Countries of Particular Concern" based on the Turkish government's systematic and egregious limitations on freedom of religion affecting all religious communities in Turkey, particularly affecting non-Muslim religious minorities who face societal discrimination and occasional violence. Additionally, the 2012

5

Report from Turkey's Association of Protestant Churches reflected that in 2011 there were continued reports of hate crimes against Christians in Turkey, but noted that in many of the cases, either the perpetrator was being prosecuted or the victim had elected not to press charges.

Ms. Esin argued that her proceedings should be reopened based on this new evidence of escalating violence against Christians in Turkey. In particular, she stressed that the USCIRF's placement of Turkey on its list of "Countries of Particular Concern" showed that the treatment of Christians rose to the level of persecution.

The BIA reviewed the new evidence Ms. Esin submitted, and acknowledged that there was continued harassment and occasional violence against religious minorities in Turkey, but concluded that the evidence Ms. Esin presented was not sufficient to make a prima facie showing that she would likely face harm rising to the level of persecution upon her return to Turkey due to her conversion to Christianity. Absent such evidence, the BIA found that Ms. Esin had not made a prima facie showing that she had a well-founded fear of persecution if she were to return to Turkey. The BIA denied Ms. Esin's motion to reopen the proceedings before the IJ because she had not established that, if her proceedings were reopened, the new evidence would likely change the result of the case. Ms. Esin now appeals from the BIA's order denying her motion to reopen.

6

## II

We review the denial of a motion to reopen for an abuse of discretion.  *See Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009).  Our review is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner.  *See id.*

## A

As the Supreme Court has acknowledged, "[m]otions for reopening of immigration proceedings are disfavored . . . ."  *INS v. Doherty*, 502 U.S. 314, 323 (1992) (citing *INS v. Abudu*, 485 U.S. 94, 107-08 (1998)).  An alien who moves to reopen her immigration proceedings based on new evidence of changed country conditions bears a "heavy burden, and must present evidence of such a nature that the BIA is satisfied that if proceedings before the IJ were reopened, with all attendant delays, the new evidence offered would likely change the result in the case."  *Ali v. U.S. Att'y Gen.*, 443 F.3d 804, 813 (11th Cir. 2006) (internal quotation marks, alterations, and citations omitted).  A motion to reopen must be supported by affidavits or other evidentiary material, and it must state new facts that will be proven at a hearing to be held if the motion is granted.  *See Ali*, 443 F.3d at 808 (quoting 8 U.S.C. § 1229a(c)(7)).

We have previously said that, at a minimum, there are at least three independent grounds upon which the BIA may deny a motion to reopen: (1) failure to establish a prima facie case; (2) failure to introduce evidence that was material and previously unavailable; and (3) a determination that, despite the alien's statutory eligibility for relief, he or she is not entitled to a favorable exercise of discretion. *See Jiang*, 568 F.3d at 1256 (quoting *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1302 (11th Cir. 2001)).

An applicant for asylum must meet the Immigration and Nationality Act's definition of a refugee. *See* 8 U.S.C. § 1158(b)(1). The INA defines a refugee as a person who cannot return to his or her home country due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). *See also Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006) ("To establish asylum eligibility, the petitioner must, with specific and credible evidence, demonstrate (1) past persecution on account of a statutorily listed factor, or (2) a 'well-founded fear' that the statutorily listed factor will cause future persecution."). "This Court has held that persecution is an extreme concept requiring more than a few isolated incidents of verbal harassment or intimidation[,] mere harassment is not persecution." *Ruiz v. Gonzales*, 479 F.3d 762, 766 (11th Cir. 2007) (citations and alterations omitted).

8

As applicable here, "[t]o establish eligibility for asylum based on a well-founded fear of future persecution, the applicant must prove (1) a subjectively genuine and objectively reasonable fear of persecution that is (2) on account of a protected ground." *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006) (citations and internal quotation marks omitted). An applicant who cannot meet the "well-founded fear standard" for asylum is generally precluded from qualifying for withholding of removal because she cannot meet the higher standard of showing that she would "more likely than not" be persecuted. *See Rivera v. U.S. Att'y Gen.*, 487 F.3d 815, 820-21 (11th Cir. 2011).

## B

We now turn to whether the BIA abused its discretion in denying Ms. Esin's motion to reopen her immigration proceedings. Ms. Esin contends that, as with reports from the Department of State, the BIA should have accorded "special weight" to the USCIRF's 2012 Annual Report as highly probative evidence on changed country conditions in Turkey. Ms. Esin correctly notes that State Department reports on country conditions are accorded "'special weight' because they are based on the collective expertise and experience of the Department of State, which 'has diplomatic and consular representatives throughout the world.'" *Matter of H-L-H- & Z-Y-Z*, 25 I. & N. Dec. 209, 213 (B.I.A. 2010), *abrogated on other grounds by Hui Lin Huang v. Holder*, 677 F.3d 130 (2d Cir. 2012) (quoting

9

*Aguilar-Ramos v. Holder*, 594 F.3d 701, 705 n.6 (9th Cir. 2010), and *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 341 (2d Cir. 2006)).   The BIA here, however, was not required to give special weight to the USCIRF's 2012 Annual Report because, as Ms. Esin acknowledges, it was not a report issued by the State Department.   Nevertheless, the BIA considered the report and explicitly cited to it when noting the continuing harassment and occasional violence against religious minorities in Turkey.

The BIA denied Ms. Esin's motion to reopen after considering the evidence she had submitted, including the USCIRF's 2012 Annual Report.   Notably, having adequately explained its decision, the BIA was not required to detail how each piece of evidence failed to support Ms. Esin's claim that she had made a prima facie showing that she would face harm rising to the level of persecution upon her return to Turkey due to her becoming a Christian.   *See Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011) ("Where the BIA has given reasoned consideration to the petition, and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented.   However, the BIA must consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted.") (quoting *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374 (11th Cir. 2006)) (internal quotation marks omitted).

10

On this record, we cannot say that the BIA's decision was arbitrary and capricious. There is nothing in the USCIRF's 2012 Annual Report or in any of the other evidence Ms. Esin submitted that indicates that the unfortunate treatment of religious minorities in Turkey, specifically Christians, rose to the level of persecution. *See Ruiz*, 479 F.3d at 766. Thus, the BIA did not abuse its discretion in denying Ms. Esin's motion to reopen since Ms. Esin did not make a prima facie showing that she has a well-founded fear of persecution if she were to return to Turkey.

## III

The BIA did not abuse its discretion in denying Ms. Esin's motion to reopen.

**PETITION DENIED.**

11