[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-12710
Non-Argument Calendar

_____

Agency No. A076-577-376

MYKOLA SHCHUPAK,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 12, 2018)

Before MARCUS, WILSON and JORDAN, Circuit Judges.

PER CURIAM:

Mykola Shchupak seeks review of the Board of Immigration Appeals'
("BIA") ruling denying his motion to reopen his removal proceedings. Shchupak
is an ethnic-Russian Ukrainian and a member of the Russian Orthodox Church,

who previously lived in western Ukraine while his brother lived in Russia. Years after his March 2013 removal hearing, he moved to reopen to pursue his claims of asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and his claim of relief under the Convention Against Torture ("CAT"), alleging that he feared persecution based on his religion, ethnicity, and family ties, and feared being forced into military service in the eastern Ukrainian conflict. The BIA denied the motion, concluding that (1) the motion was untimely, because Shchupak did not demonstrate materially changed conditions pertaining to his claims, and (2) Shchupak had not made a prima facie showing of eligibility for asylum, withholding of removal, or CAT relief. On appeal, Shchupak argues that the BIA erred in its decision and abused its discretion when it determined that the expert opinions and mailed threat he submitted lacked probative value, failed to consider his supporting evidence -- including evidence of the Russian annexation of Crimea and invasion of eastern Ukraine -- and applied a wrong legal standard to his asylum claims.[1] After careful review, we deny the petition.

We review the denial of a motion to reopen for abuse of discretion, limiting our review to whether the BIA exercised its discretion in an arbitrary or capricious manner. Jiang v. U.S. Atty. Gen., 568 F.3d 1252, 1256 (11th Cir. 2009). A motion

---

[1] Shchupak also says the BIA engaged in improper appellate fact-finding, but he relies on case law about a regulation that prohibits the BIA from fact-finding when reviewing appeals from an Immigration Judge ("IJ"), not when deciding motions to reopen. 8 C.F.R. § 1003.1(d)(3)(iv) ("[T]he Board will not engage in factfinding in the course of deciding appeals.").

2

to reopen removal proceedings must be filed no later than 90 days after the final administrative decision, but this limitation does not apply if the motion is predicated on changed country conditions that are material and could not have been discovered at the time of the removal proceedings.    8 U.S.C. § 1229a(c)(7)(C)(i)–(ii).    "An alien who attempts to show that the evidence is material bears a heavy burden and must present evidence that demonstrates that, if the proceedings were opened, the new evidence would likely change the result in the case."  Jiang, 568 F.3d at 1256–57; see also Ali v. U.S. Att'y Gen., 443 F.3d 804, 813 (11th Cir. 2006) (noting that new evidence must be "of such a nature that the BIA is satisfied that . . . [it] would likely change the result in the case" (quotations and brackets omitted)).  The BIA is not required to address every piece of evidence presented by the petitioner in its ruling.  Ayala v. U.S. Att'y Gen., 605 F.3d 941, 948 (11th Cir. 2010).

It is within the BIA's discretion to deny a motion to reopen based on these reasons: (1) a failure to establish a prima facie case for asylum, withholding of removal, or CAT relief; (2) a failure to introduce evidence that was material and previously unavailable; or (3) a determination that, despite the alien's statutory eligibility for relief, he is not entitled to a favorable exercise of discretion.  Jiang, 568 F.3d at 1256.  "The standard for granting a motion to reopen immigration

3

proceedings is high," and the BIA has "significant discretion in deciding whether to do so." Bing Quan Lin v. U.S. Att'y Gen., 881 F.3d 860, 872 (11th Cir. 2018).

To establish a claim for asylum, an applicant must prove that he was persecuted, or has a well-founded fear of future persecution, on account of his race, religion, nationality, membership in a particular social group, or political opinion. Ayala, 605 F.3d at 948-49. To establish a well-founded fear of future persecution, an applicant must show that there is a reasonable possibility he will suffer this kind of persecution if returned to his native country. 8 C.F.R. § 1208.13(b)(2)(i)(B); Mehmeti v. U.S. Att'y Gen., 572 F.3d 1196, 1200 (11th Cir. 2009). The applicant must establish that his fear is both subjectively genuine and objectively reasonable. Mehmeti, 572 F.3d at 1200. An applicant may successfully seek asylum based on a claim of forced conscription, but only if he proves that he "would be disproportionately punished for refusing to serve . . . or that he would be forced to join an internationally condemned military." Mohammed v. U.S. Att'y Gen., 547 F.3d 1340, 1346 (11th Cir. 2008). A particular social group has to be "socially distinct within the society in question." Gonzalez v. U.S. Atty. Gen., 820 F.3d 399, 404 (11th Cir. 2016) (quotations omitted).

An alien seeking withholding of removal under the INA must demonstrate that it is more likely than not that he will be persecuted or tortured upon his return to his home country on account of his race, religion, nationality, membership in a

4

particular social group, or political opinion.  Carrizo v. U.S. Att'y Gen., 652 F.3d 1326, 1331 (11th Cir. 2011) (quotations omitted).  To establish a claim for CAT relief, the alien has the burden of proving that it is more likely than not that he will be tortured by or with the acquiescence of the government if removed to his home country.  Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004).

We've observed that the BIA, when reviewing a motion to reopen, may not overlook or "inexplicably discount[]" relevant record evidence that corroborates an applicant's claim.  Jiang, 568 F.3d at 1258 (addressing the BIA's denial of a motion to reopen due to changed country conditions).  However, the BIA is entitled to give no deference to unauthenticated documents.  Mu Ying Wu v. U.S. Att'y Gen., 745 F.3d 1140, 1153 (11th Cir. 2014).  We have held that an IJ and the BIA did not err in giving little or no weight to a document they concluded was unauthenticated, as they "properly considered [the] evidence and offered reasoned conclusions as to how to weigh it."  Id. at 1154.

Here, the BIA did not abuse its discretion when it determined that Shchupak failed to demonstrate a material change in country conditions or a prima facie case for asylum, withholding of removal, or CAT relief.  For starters, the BIA did not abuse its discretion when it discounted the probative value of the opinions of purported experts Igor A. Kotler and Adriana Helbig, Ph.D.  The BIA noted that the opinions did not indicate how Kotler and Helbig obtained the information

underlying their opinions or when they had visited Ukraine, that Kotler did not attach his curriculum vitae ("CV"), and that Helbig's expertise was primarily related to music. As the record reflects, Kotler cited to some sources for the information in his opinion, but he did not indicate how he obtained the information underlying the key parts of his opinion pertaining to Shchupak's claims. Likewise, Helbig's opinion did not provide any sources for the information underlying her opinion. As for Kotler's qualifications, they included broad experience in the area of the Soviet Union and post-Soviet states, yet did not demonstrate expertise pertaining specifically to Ukraine. And while Helbig's CV reflected a focus on Ukraine, it was primarily in the area of music. In contrast, the expert in Matter of Marshi, File No. A26 980 386 (A.G. Feb. 13, 2004) -- in which the Attorney General had said there was no requirement that a witness be formally qualified as an expert before giving testimony on country conditions in an administrative hearing -- had extensive and relevant training, qualifications, and experience in the country at issue. Thus, the BIA did not "inexplicably discount" Helbig's and Kotler's opinions in this case. Jiang, 568 F.3d at 1258.

As for the BIA's determination that the threat mailed to Shchupak lacked indicia of reliability, it was not an abuse of discretion. Shchupak did not present any evidence with his motion to reopen explaining the context of the letter -- for example, how the sender would know his address and that he was returning to

Ukraine, how he knew that the substance it was smeared with was likely animal's blood, whether Shchupak knew who the sender was, and whether and how Shchupak was on the radar of Ukrainian nationalists.  Shchupak did not expressly indicate that the letter arrived in the attached envelope, and there is no explanation of who Ivan Zayaci is or whether Shchupak knew him.  Further, neither the letter nor the envelope had been authenticated.  On this record, the BIA did not abuse its discretion by giving little weight to the largely unexplained and unauthenticated document.  See Mu Ying Wu, 745 F.3d at 1153–54.

Nor did the BIA abuse its discretion when it concluded that Shchupak failed to present evidence of a change in country conditions material to his proposed claims for relief based on religion or nationality.  Shchupak presented evidence that significant changes have occurred in Ukraine since March 2013, resulting in violent conflict between pro-Ukrainian and pro-Russian groups.  The reports he submitted, however, showed that most of the violence has occurred in eastern Ukraine, and Shchupak is from western Ukraine.  Moreover, while he submitted evidence of torture of detainees and societal discrimination and harassment of ethnic and religious minorities, he did not demonstrate that ethnic Russians or members of the Russian Orthodox Church in Ukraine are singled out as victims of this abuse.  Nor is there evidence showing that these conditions did not exist at the time of his removal hearing, other than a statement by Kotler that Ukrainian

7

nationalists began viewing Russians in Ukraine as traitors and separatists sometime after the invasion of Crimea. Accordingly, the BIA did not abuse its discretion when it determined that Shchupak failed to establish materially changed country conditions. See Jiang, 568 F.3d at 1256.

Similarly, the BIA did not abuse its discretion when it concluded that Shchupak failed to establish a prima facie case for asylum, withholding of removal, or CAT relief based on his political opinion or membership in a particular social group. To begin with, Shchupak failed to articulate in his motion what particular social group he was part of or, because, even assuming he adequately asserted a proposed group of ethnic Russians belonging to the Russian Orthodox Church, he failed to present evidence that this group constitutes a socially distinct group in Ukraine. Gonzalez, 820 F.3d at 404. Indeed, the only evidence Shchupak presented showing that a dissenting political opinion might be imputed to him was in Kotler's opinion, which, as we've already said, the BIA properly concluded lacked evidentiary value. Moreover, when the BIA determined that Shchupak had not presented a prima facie case for these claims, it applied the correct legal standard, because it accepted Shchupak's assertions in his proposed application as true before determining that he had not presented a reasonable likelihood that he would be persecuted upon return to Ukraine. See C.F.R. § 1208.13(b)(2)(i)(B); Jiang, 568 F.3d at 1256.

Nor did the BIA abuse its discretion when it concluded that Shchupak failed to assert a claim based on forced conscription.  As the record reveals, Shchupak did not present any evidence, other than his own unsupported assertion and the properly discounted opinion of Kotler, that he "would be disproportionately punished for refusing to serve . . . or that he would be forced to join an internationally condemned military."  Mohammed, 547 F.3d at 1346.  Shchupak did not establish that it was more likely than not that he would be tortured by or with the acquiescence of the government if removed to Ukraine, because the only evidence he presented of torture either pertained to events in eastern Ukraine or did not specify that ethnic Russians in Ukraine were being tortured.  See Reyes-Sanchez, 369 F.3d at 1242.  Finally, Shchupak has abandoned his claim based on being targeted for extortion based on imputed wealth, because he failed to argue this issue in his brief.  Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

Accordingly, we deny Shchupak's petition.

**PETITION DENIED.**