[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 17-10651, 17-14840
Non-Argument Calendar

_____

Agency No. A206-895-603

LEIDY MAYBELI OSORIO-ZACARIAS,
A.O.B.O.,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals

_____

(August 14, 2018)

Before MARCUS, WILLIAM PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Leidy Osorio-Zacarias and her minor son seek review of the Board of
Immigration Appeals's ("BIA") decision affirming the immigration judge's ("IJ")
denial of her application for asylum, withholding of removal, and relief under the

Convention Against Torture ("CAT relief"), and the BIA's denial of her motion to reopen. On appeal, Osorio-Zacarias argues that: (1) she qualifies for asylum and withholding of removal because she suffered past persecution in Guatemala and established a well-founded fear of future persecution; (2) the BIA abused its discretion when it denied her motion to reopen based on new evidence of her post-traumatic stress disorder ("PTSD") diagnosis and of country conditions. After careful review, we dismiss the petition in part, and deny it in part.

We review only the BIA's decision, except to the extent the BIA expressly adopted or agreed with the opinion of the IJ. Ayala v. U.S. Att'y Gen., 605 F.3d 941, 947-48 (11th Cir. 2010). We review the BIA's legal determinations de novo and its factual determinations under the substantial-evidence test. Lopez v. U.S. Att'y Gen., 504 F.3d 1341, 1344 (11th Cir. 2007). We must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole. Id. Under the substantial-evidence test, we review the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision. Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004). We review our subject-matter jurisdiction de novo. Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006). Finally, we review the BIA's denial of a motion to reopen for abuse of discretion. Verano-Velasco v. U.S. Att'y Gen., 456 F.3d 1372, 1376 (11th Cir. 2006).

2

First, we are unpersuaded by Osorio-Zacarias's claim that the BIA erred by denying her asylum and withholding of removal. The Attorney General has the discretion to grant asylum to an alien who establishes that she is a refugee. 8 U.S.C. § 1158(b)(1)(A). To establish asylum based on past persecution, the applicant must prove that: (1) she was persecuted; and (2) the persecution was on account of a protected ground. Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006). Persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and mere harassment does not amount to persecution. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005). A credible death threat by a person who has the immediate ability to act on it constitutes persecution even if the threat is not successfully carried out. Diallo v. U.S. Att'y Gen., 596 F.3d 1329, 1333-34 (11th Cir. 2010). In Diallo, we concluded that the petitioner had suffered persecution where soldiers killed his brother and threatened him, noting that there was no reason why he should have to stay in his country awaiting death in order to succeed on a claim of past persecution. Id. at 1334. The threat was attributed to the Guinean government and was based on the petitioner's opposition to the government. Id. at 1331, 1334.

"An applicant who has been found to have established . . . past persecution shall also be presumed to have a well-founded fear of persecution on the basis of the original claim." 8 C.F.R. § 208.13(b)(1). That presumption may be rebutted if

3

the government establishes by a preponderance of the evidence that: (1) "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution"; or (2) "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country of nationality . . . and under all the circumstances, it would be reasonable to expect the applicant to do so." Id. § 208.13(b)(1)(i)(A) & (B), (b)(1)(ii).

An applicant may also establish a well-founded fear of persecution without proving past persecution. Id. § 208.13(b)(2). To do so, an applicant must establish a fear of persecution in her country of nationality on account of a protected ground, a "reasonable possibility" of suffering persecution if she returns to that country, and that she is unable or unwilling to return because of her fear. Id. § 208.13(b)(2)(i). The applicant's fear of persecution must be "subjectively genuine and objectively reasonable." Al Najjar v. Ashcroft, 257 F.3d 1262, 1289 (11th Cir. 2001). The applicant need not establish a reasonable possibility of persecution if the applicant instead proves that she is a member of, or is identified with, a group that is subjected to a "pattern or practice" of persecution in her country of nationality. 8 C.F.R. § 208.13(b)(2)(iii). "An applicant does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality . . . if under all the circumstances, it would be reasonable to expect the applicant to do so." Id. §

4

208.13(b)(2)(ii). The applicant bears the burden of proving that it would not be reasonable for her to relocate, "unless the persecution is by a government or is government-sponsored," id. § 208.13(b)(3)(i), in which case relocation is presumed to be unreasonable "unless the [government] establishes by a preponderance of the evidence that, under all the circumstances, it would be reasonable for the applicant to relocate." Id. § 208.13(b)(3)(ii). When an applicant cannot meet the "well-founded fear" standard of asylum, she is generally precluded from qualifying for either asylum or withholding of removal. Kazemzadeh v. U.S. Atty. Gen., 577 F.3d 1341, 1351–52 (11th Cir. 2009)

An asylum applicant must also establish a nexus between the feared persecution and a statutorily-protected factor by presenting specific, detailed facts showing that she will be singled out on account of the protected factor. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). A protected factor need only be one of the motivations for the persecution. Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1235 (11th Cir. 2007). To qualify as a "particular social group," a group must be defined by a shared, immutable characteristic that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities. Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1193, 1196 (11th Cir. 2006).

An alien shall not be removed to a country if her life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion.  8 U.S.C. § 1231(b)(3).  She must show that it is more likely than not that she will be persecuted or tortured upon being returned to her country.  Sepulveda, 401 F.3d at 1232.  This standard is more stringent than asylum's well-founded fear standard.  Kazemzadeh, 577 F.3d at 1352.  The alien bears the burden to show her eligibility for withholding of removal under the Immigration and Nationality Act ("INA").  8 C.F.R. § 208.16(b).  To do so, the alien must either demonstrate past persecution based on a protected ground, Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006), or she must demonstrate a future threat to her life or freedom.  Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 437 (11th Cir. 2004).  The statutes governing asylum and withholding of removal protect only against persecution on account of the victim's political opinion, not the persecutor's.  Ruiz v. U.S. Atty. Gen., 440 F.3d 1247, 1257 (11th Cir. 2006).  Private acts of violence, general criminal activity, and purely personal retribution do not qualify as persecution based on a statutorily protected ground.  Id.

In order to obtain CAT relief, the burden of proof is on the applicant to establish that it is more likely than not that she would be tortured if removed to her country.  8 C.F.R. § 208.16(c)(2); Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1242 (11th Cir. 2004).  The alien must demonstrate that the torture would be

6

inflicted by the government or that the government would be aware of the torture and would fail to intervene.  Reyes-Sanchez, 369 F.3d at 1242.

Here, the BIA did not err in concluding that Osorio-Zacarias was not entitled to asylum or withholding of removal because she failed to show she was persecuted against in Guatemala.  According to the record, Osorio-Zacarias sought relief based on her fear that if she returned to Guatemala, she and her son would be killed like her husband, Jorge Mario Barrientos-Nufio, was when he was murdered by a local man named Mateo.  Osorio-Zacarias explained that three days after the murder, Mateo called to warn her that, if she went to the police, he would kill her and her older son.  Osorio-Zacarias moved one kilometer away to live with her parents, thinking that Mateo would do nothing because she had not reported him to the police.  She had no further contact with Mateo until six years later, when Mateo and his brothers told her that, because her son was older and could seek revenge for his father, she and her son should leave the country or be killed.  She left to work in San Martin, a town on the Guatemala/Mexico border, and when she returned a month later, Mateo's brothers saw her in town and told her they knew she had been in San Martin.

As the record reveals, however, Osorio-Zacarias's two threats came from Mateo, who was a private actor, and she had failed to seek protection from Mateo from authorities within Guatemala, which alone is enough to defeat her claim.

While she attempted to overcome this failure with evidence that the authorities would have been unwilling or unable to protect her had she reported the threats to them, Osorio-Zacarias's country-condition evidence does not support this argument. See Lopez, 504 F.3d at 1345. Instead, the country-condition evidence mainly showed some corruption and ineffectiveness in the Guatemalan police force as it relates to cases of organized crime, gang violence, and domestic abuse, and nothing suggests that Osorio-Zacarias's husband's murder was connected to organized crime or gang violence or that Mateo's threats were domestic abuse.

Further, even if Osorio-Zacarias had sought police protection within Guatemala, her two encounters with Mateo were isolated incidents that occurred over a six-year period. See Sepulveda, 401 F.3d at 1231 (stating that isolated incidents are not sufficient to establish past persecution). Thus, unlike in Diallo, there was no indication that when Mateo made death threats, he had the "immediate ability to act on" them. 596 F.3d at 1331-34 (holding that past persecution occurred where the petitioner was threatened with death by the same soldiers who killed his brother and was only able to avoid the same fate by escaping from detention). Rather, Mateo first threatened Osorio-Zacarias by telephone and did not confront her for six years and, after his second threat, he did not confront her at any time in the two months before she left for the United States.

8

Moreover, even if Mateo's threats did rise to the level of persecution, substantial evidence supported the IJ's and BIA's conclusion that they were not based on a protected ground. See Forgue, 401 F.3d at 1286. Rather, substantial evidence supports the IJ's and BIA's conclusion that Mateo was motivated by general criminality rather than on the basis of a protected ground. See Ruiz, 440 F.3d at 1257. Mateo explicitly threatened Osorio-Zacarias and her son to prevent them from reporting him to the police, which furthered his criminal goals. Id.

Finally, for Osorio-Zacarias to establish a well-founded fear of future persecution, she would need to show that she could not avoid persecution by relocating elsewhere in Guatemala. See 8 C.F.R. § 208.13(b)(2)(ii) (indicating that a fear is not well-founded if the applicant could relocate within their country). However, we lack jurisdiction to address the IJ's and BIA's conclusion that Osorio-Zacarias failed to establish that she could not relocate within Guatemala. We may only review a final order of removal if the petitioner exhausted all administrative remedies that were available as of right. 8 U.S.C. § 1252(d)(1). A petitioner fails to exhaust the administrative remedies for a particular claim when she does not argue the "core issue now on appeal" before the BIA. Indrawati v. U.S. Att'y Gen., 779 F.3d 1284, 1297 (11th Cir. 2015). We lack jurisdiction to consider an argument the petitioner did not raise before the BIA even if the BIA addressed the issue sua sponte. Amaya-Artunduaga, 463 F.3d at 1250.

As the record shows, Osorio-Zacarias did not exhaust the relocation issue before the BIA. Indeed, her brief to the BIA did not address relocation; at best it implied that Mateo could find her elsewhere in the country without developing the argument that his ability to find her meant that she could not effectively relocate. See Jeune v. U.S. Att'y Gen., 810 F.3d 792, 800-01 (11th Cir. 2016) (holding that a petitioner must make more than passing references to exhaust an issue). This is so even though her legal memorandum to the IJ, which was otherwise identical to her BIA brief, included a discrete section discussing the relocation issue. And although the BIA addressed the relocation issue anyway, that does not provide us with jurisdiction where Osorio-Zacarias failed to exhaust the argument. See Amaya-Artunduaga, 463 F.3d at 1250.[1] Accordingly, because Osorio-Zacarias failed to establish that she suffered past persecution based on a protected ground, and that she could not relocate within Guatemala, the IJ and BIA did not err in denying her application for asylum and withholding of removal.

We also find no merit to Osorio-Zacarias's argument that the BIA abused its discretion when it denied her motion to reopen. A motion to reopen must state new facts that would be proven at a hearing to be held if the motion is granted, and should be supported by affidavits and other evidentiary materials. 8 U.S.C. §

---

[1]    We also lack jurisdiction to review the denial of CAT relief because Osorio-Zacarias failed to exhaust that issue before the BIA. 8 U.S.C. § 1252(d)(1). Her brief to the BIA included conclusory statements that she was entitled to CAT relief, but she never raised any specific arguments about CAT relief. See Jeune, 810 F.3d at 800-01.

10

1229a(c)(7)(A), (B).  Motions to reopen may be granted if there is new evidence that is material and was not available and could not have been discovered or presented at the removal hearing.  8 C.F.R. §§ 1003.2(c)(1), 1003.23(b)(3).  To make such a showing, the alien bears a heavy burden and must present evidence of such a nature that the BIA is satisfied that, if the proceedings before the IJ were reopened, the new evidence offered would likely change the result in the case.  Ali v. U.S. Att'y Gen., 443 F.3d 804, 813 (11th Cir. 2006).

We cannot say the BIA abused its discretion when it denied Osorio-Zacarias's motion to reopen her applications for asylum or withholding of removal.  As the record indicates, the new evidence she submitted was unrelated to whether there was a nexus between the harms she suffered and a protected ground and, accordingly, was not likely to change the outcome of the case.  See id.  Thus, for example, the evidence of her PTSD diagnosis was unrelated to her claim that she was persecuted against as a member of a particular social group.  To the extent Osorio-Zacarias contended that her PTSD prevented her from testifying completely, she indicated only that she could have testified regarding her suspicion that Mateo made the second threat because she reported an unrelated sexual assault to the police and he mistakenly believed she was reporting him.  However, this testimony would have been cumulative because Osorio-Zacarias recounted this

11

suspicion in her declaration when she noted that Mateo may have approached her the second time because he heard that she had been to the police station.

As for the additional country-condition evidence that discussed rampant violence against women in Guatemala and a lack of available mental healthcare, which may relate to her ability to relocate within the country, these issues also were unrelated to her claim that she was persecuted against as a member of a particular social group.[2]  Moreover, this evidence was cumulative of evidence of violence against women and inadequate mental healthcare in the original record.

Finally, the BIA did not abuse its discretion when it denied the motion to reopen Osorio-Zacarias's application for CAT relief.  Although CAT relief does not require a showing that the harm would be based on a protected ground, the new evidence did not help establish that it was more likely than not that Osorio-Zacarias would be tortured with the acquiescence of government officials in Guatemala.  The new country-condition evidence showed that the police had significant issues in prosecuting crimes, particularly those related to organized crime or gang violence, and that Guatemalan society had a pervasive bias against women, particularly in domestic disputes, but nothing indicated that the Guatemalan government would acquiesce in the torture of a woman in Osorio-

_____

[2] This evidence could have helped Osorio-Zacarias's claims that she was persecuted against as a Guatamalan woman or a Guatamalan woman who reported a crime, but she has expressly abandoned those two claims on appeal.  Sepulveda, 401 F.3d at 1228 n.2.  She also has abandoned any argument about the IJ's denial of her motion to continue because she made only a passing reference to it in a footnote.  Id.

Zacarias's position.  Thus, because the new evidence was not likely to change the outcome of the case, we deny Osorio-Zacarias's petition for review regarding the BIA's denial of her motion to reopen.  See id.

**Petition DISMISSED in part and DENIED in part.**

13